Complaint No.
File at: SDNY.

Date: September of 2020

Page 1 of 139

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK STATE

| MARIO A. THOMPSON, IS THE SOLE OWNER OF THE MOON IN PROXIMITY TO THE PLANET EARTH AMONGST ALL OTHER MOONS AND THE PLANETARY DIVERSITIES OF NEPTUNE, KEPLER, GLIESE, WASP, BESTOWED FROM THE CREATOR. IN FURTHERANCE TO BE RECOGNIZED FROM WITHIN THE HOLY BIBLE AS PRINCE UNIVERSAL MICHAEL, FROM THE  BOOK OF DANIEL 12:1 (KJV), | Case No.: <br><br> **COMPLAINT** <br><br> <u>Trial by jury</u> <br> <u>Demanded.</u> <br><br> This complaint is, for reference about the defendants, to the Chief Judge, Southern District of New York State, not to be filed at this time. |
| --- | --- |
| Plaintiff, <br> vs. <br> Defendants, <br><br> NISSAN NORTH AMERICA INCORPORATED, CARLOS GHOSN, NISSAN INCORPORATED, INFINITI FINANCIAL SERVICES INCORPORATED, LEGACY NISSAN, LEGACY INFINITI also known as ATLANTIC INFINITI, NEMET AUTOCENTER, KOEPPEL NISSAN, INFINITI OF MANHATTAN, NATIONAL BASKETBALL ASSOCIATION, MASS TRANSIT AUTHORITY, NEW YORK CITY TRANSIT AUTHORITY, MICHAEL J. JORDAN, ESTATE | |

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 1 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 10004
New York, N.Y. 10163
Phone (646) 377-6677
Email: mat92878@gmail

Case 1:20-cv-08599-CM   Document 1   Filed 09/28/20   Page 2 of 139

Complaint no.                    Date: September of 2020                    Page 2 of 139
File at: SDNY

OF JAMES R. JORDAN, both known as Leviathan's ancestry who caused the flood of the planet Earth in the days of Noah, NIKE INCORPORATED, JERRY REINSDORF, THE CHICAGO BULLS, SCOTTIE M. PIPPEN, BENJAMIN R. ARMSTRONG JR, also known as B. J. ARMSTRONG, JOSEPH LACOB, PETER GUBER, GSW SPORTS LIMITED LIABILITY COMPANY, GOLDEN STATE WARRIORS, WARDELL S. CURRY II also known as STEPHEN CURRY, WARDELL S. CURRY I also known as DELL CURRY, MAYCE WEBBER JR., CHRISTOPHER WEBBER III, MANDALAY FILMED ENTERTAINMENT LIMITED LIABILITY COMPANY, NATE PARKER FOUNDATION, NICHOLAS A. YOUNG,  FATHER OF NICHOLAS A. YOUNG, DANIEL GILBERT, GORDON GUND, USHER RAYMOND IV, ESTATE OF USHER RAYMOND III", ESTATE OF USHER RAYMOND II, IMAN A. SHUMPERT, FATHER OF IMAN A. SHUMPERT, CLEVELAND CAVALIERS, LEBRON R. JAMES JR., ANTHONY MCCLELLAND, EDWARD "EDDIE" JACKSON, TRISTAN T.J. THOMPSON, FATHER OF TRISTAN T.J. THOMPSON, WILLIAM L. ROBERTS II also known as RICK

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 2 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

ROSS, RAWLE HELYN ANDREWS SR. M.D.
RAWLE HELYN ANDREWS JR. M.D.,
FATHER OF CONRAD MURRAY M.D. JAY Z,
SHAWN CARTER ENTERPRISES, FATHER
OF JAY Z, ESTATE OF ADNES REEVES,
ROC NATION INCORPORATED,
INTERSCOPE DEF JAM INCORPORATED,
KANYE O. WEST, GOOD MUSIC
INCORPORATED, UNIVERSAL MUSIC
GROUP RECORDINGS INCORPORATED,
SEAN M. L. ANDERSON also known as BIG
SEAN, JEREMIH FELTON also known as
JERMIH, MIGOS (music group) QUAVIOUS K.
MARSHALL also known as QUAVO,
KIRSNICK K. BALL also known as TAKEOFF,
KIARI K. CEPHUS also known as OFFSET,
SHELTON J. LEE also known as SPIKE LEE,
SEAN J. COMBS also known as SEAN P.
COMBS, also known as PUFF DADDY, also
known as P-DIDDY, also known as DIDDY,
BAD BOY ENTERTAINMENT LIMITED
LIABILITY COMPANY, FATHER OF DIDDY,
ESTATE OF EARL M. COMBS, JACQUES
BERMAN WEBSTER II ALSO KNOWN AS
TRAVIS SCOTT, FATHER OF TRAVIS
SCOTT, NBC UNIVERSAL INCORPORATED,
WILLIAM B. COSBY, BERNARD L. MADDOF,
IVAN F. BOESKY, PERCY R. MILLER also

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 3 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

known as MASTER P., FATHER OF MASTER
P., BENJAMIN D.SIMMONS, FATHER OF
BENJAMIN D. SIMMONS, ANTHONY M.
DAVIS JR., FATHER OF ANTHONY M. DAVIS
JR., ANTHONY DAVIS SR., AARON A.
GORDON, FATHER OF AARON A. GORDON,
ESTATE OF WILTON N. CHAMBERLAIN,
CALVIN C. BROADUS JR. also known as
SNOOP DOGG, FATHER OF SNOOP DOG,
KENYA BARRIS, BARACK H. OBAMA JR.,
FATHER OF BARACK OBAMA JR., BARACK
OBAMA SR. LIEBERMAN BROADCASTING
INCORPORATED, JORGE ANTOLIN,
FATHER OF JORGE ANTOLIN, JAMES E.
HARDEN JR. also known as JAMES
HARDEN, FATHER OF JAMESH HARDEN,
CHRISTOPHER E. PAUL also known as
CHRIS PAUL, FATHER OF CHRIS PAUL,
E.W. SCRIPPS COMPANY, KATZ
BROADCASTING INCORPORATED,
BOUNCE TV, MTV, VIACOM MEDIA
NETWORKS INCORPORATED JOHN DOES
1 THROUGH 100, JOHN DOES 101
THROUGH 200, JOHN DOES 201 THROUGH
300, JOHN DOES 3001 THROUGH 413,
JOHN DOES 401 THROUGH 500, JOHN
DOES 501 THROUGH 600, JOHN DOES 601
THROUGH 700, JOHN DOES 701 THROUGH

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 4 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

800, JOHN DOES 801 THROUGH 900 AND
JOHN DOES 901 THROUGH 1000.

---

Plaintiff, Pro Se, "Mario Thompson" alleges upon datum against the following
defendants. Defendants "Nissan North America Inc.", defendant "Carlos Ghosn",
defendant " Nissan Inc.", defendant "Infiniti Financial Services Inc.", defendant
"Legacy Nissan", defendant "Legacy Infiniti also known as Atlantic Infiniti", defendant
"Nemet Autocenter", defendant " Koeppel Nissan", defendant " Infiniti Of Manhattan",
defendant "National Basketball Association", defendant "Mass Transit Authority",
defendant  "New York City Transit Authority", defendant "Michael J. Jordan",
defendant  "father of Michael J. Jordan also known as Leviathan who ancestors
flooded the planet Earth in the days of Noah", defendant "estate of James R.
Jordan", defendant " Nike Inc.", defendant " Jerry Reinsdorf", defendant  "The
Chicago Bulls", defendant " Scottie M. Pippen", defendant " Benjamin R. Armstrong
Jr., also known as B. J. Armstrong", defendant "Joseph Lacob", defendant "Peter
Guber", defendant "GSW Sports LLC.", defendant "Golden State Warriors",
defendant  "Wardell S. Curry II also known as Stephen Curry", defendant "Wardell S.
Curry I also known as Dell Curry", defendant "Mayce Webber Jr.", defendant
"Christopher Webber III", defendant  "Mandalay Filmed Entertainment LLC.",
defendant "Nate Parker Foundation", defendant " Nicholas A. Young", defendant
"father of Nicholas A. Young", defendant " Daniel Gilbert", defendant "Gordon Gund",
defendant "Usher Raymond IV", defendant "estate of Usher Raymond III", defendant
"estate of Usher Raymond II", defendant "Iman A. Shumpert", defendant " father of
Iman A.  Shumpert", defendant "Cleveland Cavaliers", defendant "Lebron R. James
Jr.", defendant " Anthony Mcclelland", defendant " Edward "Eddie" Jackson",
defendant "Tristan T.J. Thompson", defendant "father of Tristan T.J. Thompson",

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 5 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

defendant "William L. Roberts II also known as Rick Ross", defendant " Rawle Helyn Andrews Sr. M.D.", Rawle Helyn Andrews Jr. M.D.", defendant " father of Conrad Murray M.D. Jay Z", defendant "Shawn Carter Enterprises", defendant " father of Jay Z", defendant "estate of Adnes Reeves", defendant "Roc Nation Inc.", defendant " Interscope Def Jam Inc.", defendant "Kanye O. West", defendant " Good Music Inc.", defendant "Universal Music Group Recordings Inc.", defendant "Jeremih Felton also known as Jeremih", defendant "Sean M. L. Anderson also known as Big Sean", defendant "Migos", defendant "music group" "Quavious K. Marshall also known as Quavo", defendant " Kirsnick K. Ball also known as Takeoff", defendant "Kiari K. Cephus also known as Offset", defendant  "Shelton J. Lee also known as Spike Lee", defendant  "Sean J. Combs also known as Sean P. Combs also known as Puff Daddy, also known as P-Diddy, also known as Diddy", defendant "Bad Boy Entertainment LLC.", defendant "Diddy's father estate of Earl M. Combs", defendant "Jacques B. Webster II also known as Travis Scott",  father of "Travis Scott", defendant "NBC Universal Inc.", defendant "William B. Cosby", defendant "Bernard L. Maddoff", defendant "Ivan F. Boesky", defendant "Percy R. Miller also known as Master P.", defendant "father of Master P.", defendant "Benjamin D. Simmons", defendant "father of Benjamin D. Simmons", defendant "Anthony M. Davis Jr.", defendant " father of Anthony M. Davis Jr.", defendant "Anthony Davis Sr.", defendant "Aaron A. Gordon", defendant "father of Aaron A. Gordon", defendant " estate of Wilton N. Chamberlain also known as Wilt Chamberlain", defendant "Calvin C. Broadus Jr. also known as Snoop Dogg", defendant "father of Snoop Dog", defendant "Kenya Barris", defendant "BARACK H. Obama Jr.", defendant 'Lieberman Broadcasting Inc., defendant "Jorge Antolin", defendant "James E. Harden Jr. also known as James Harden", defendant "Christopher E. Paul also known as Chris Paul", defendant  "John Does 1 through 100", defendant "John Does 101 through 200", defendant "John Does 201 through 300", defendant "John Does 3001 through 413", defendant "John Does 401 through 500", defendant "John Does

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 6 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

501 through 600", defendant "John Does 601 through 700", defendant "John Does 701 through 800", defendant "John Does 801 through 900 and John Does 901 through 1000". Defendants collectively are known as by Nissan North America et al.

Plaintiff Pro Se complains herein and avers as follows:

1.     This complaint is in regards to the defendants, who have committed against plaintiff multifarious offences, which have transpired during defendants business practices, marketing processes, for defendant automobile dealerships, radio, television shows, sports, movies, songs, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

2.     That the defendants businesses have all collectively conspired, together to perpetrate the multifarious offences of which plaintiff complains.

3.     Resultantly, plaintiff is responding to the defendants as they have been contiguously detrimental utilizing their conspiracies opposing to the plaintiff and there heritages, thereby perpetrating the offences for the comportments of genocide.

4.     Because of defendants participation within the purposes to offence the plaintiff defendants have denied the plaintiff the same opportunities normally given to others as plaintiff is by their heritage an U.S. citizen, a male Hispanic Cuban.

5.     Subsequently to the facts of the case the plaintiff is an ordinary consumer and plaintiff is thought to have the proprietorship rights to the Moon and enforcement to it's development by NNA enterprises.

6.     Because of this this consumerism and Moon ownership there has been offence

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 7 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

by upon plaintiff's race, abhorrence's perpetrated by defendants to which they have committed multifarious offences, belligerences to do harm towards the plaintiff and there race.

7.      Resultantly  plaintiff's charges of defendants exists because of defendants entrenched, institutionalized discriminatory principles perpetrated upon plaintiff's Civil Rights, age, race, sex, national origin and disability, plaintiff's heritages are Hispanic, Asian, Indian, (referred to as Hispanic.).

8.      That in the events defendant's disdainful comportments transpired by way of defendants routine insensible corporate undertaking and there vast conspiratorial marketing initiatives and capabilities.

9.      By way of defendants marketing by for their companies, automobile dealerships, radio, television shows, sports, movies, songs, music videos, games, magazines, internet, billboards, newspapers, digital online and offline collectively. That within defendants conspiracies they have utilized there marketing, collectively responding towards plaintiff and their race by xenophobia and defamation of character.

10.      Moreover defendants have perpetrated an contiguous amount of injustices against plaintiff by way of their utilization of nefarious and reprehensible marketing procedures. Defendant's total marketing protocol has been for the disreputable utilization of compulsory sterilization, the acquisition of the sickle cell anemia disease, race conversion and or "human experimentation" and equivocating in murder.

11.      Resultantly, defendants marketing presentations is the end results to produce "genocidal" stratagems towards the plaintiff as well as to plaintiff's race.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 8 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

12.     As a result plaintiff is responding to defendants nefarious deployment(s) of multifarious schemes to achieve an despicable goal of genocide, compulsory sterilization, the acquisition of the sickle cell anemia and "human experimentation" of others.

13.     In the act of occurrences defendants have utilized a repetitive pattern and practice of offences that have been systematically perpetrated to accomplish their objectives by the way of NNA's and Nissan Motor Acceptance Corporation's (NMAC) utilization of fraud, financing schemes misrepresentations, discriminatory conducts, defamation of character, libelous slander per se, conspiracies, practicing of an eugenics marketing campaign process.

14.     That one of defendants most indicative operations happened when multifarious offences transpired as plaintiff, an ordinary consumer, went car shopping at the defendants 4 relevant automobile dealerships, In the event plaintiff while looking to develop an officious financial offer for this new vehicle delved into the defendants nefarious marketing stratagem unpretentiously aware of defendants multifarious offences. As an explanation;

o    Defendants marketing programs have routinely functioned by way of;

•    Defendants operate by utilizing their institutionalized discriminatory processes strategized from within the corporate offices, marketing departments and affiliated automobile dealerships inclusively that of (MJJ). Subsequently, defendants and MJJ have procedural discriminatory conducts in the marketing decisions, guidelines originating from within the in-house corporate offices and outside affiliate dealerships. These guidelines are performed within systematic day to day business operations

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 9 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

to carry out routine discriminatory conducts;

- By these decisions from the corporate offices defendants, MJJ, have performed multifarious conspiratorial schemes utilized for their marketing against plaintiff's heritage inclusively of fraud, discriminatory conducts, slander and defamation of character. Perpetrating the offences predominantly by way of defendants marketing within automobile dealerships, radio, television, sports, movies, songs, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

- Resultantly these marketing comportments would develop into utilizing the scientific and systematic practice of eugenics, compulsory sterilization, race conversion, assimilating of diseased black persons based upon their sickle cell anemia medical valuations, spreading of the diseases sickle cell anemia and/or aids, equivocating in genocide of the plaintiff's nationality;

- Upon datum in one cause of defendants marketing comportments there was placement of a prevalent scheme and conspiracy at a place of past employment of plaintiff the MTA-NYCTA. Whereby the defendants perpetrated defamatory and discriminatory comportments against plaintiff for establishment of their ad campaign's allocation and distribution at MTA-NYCT 2005 through present. Resultantly, by this ad campaign, plaintiff was terminated from employment 2006 during the operation of defendants marketing protocol to practice genocide of the plaintiff's nationality. Meaning that plaintiff past employer NYCTA participated in an overall marketing process as above said. And that plaintiff was terminated as part of a joint marketing protocol by the defendants, which utilizes compulsory sterilization processes against certain ethnicities, under concealment.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 10 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

- Moreover at the 4 dealerships marketing level defendants would utilize false and misleading advertisements, fraudulent financing, banking fees all inclusive of discriminatory comportments and defamation of character strategies. In the aspect of defendants dealerships, marketing, there would be the conspiratorial utilization of discriminatory conducts against plaintiff's age, race, sex, national origin and disability as well as the practice of compulsory sterilization and eugenics of the plaintiff's Hispanic heritage;

- A different unlawful marketing articulation of defendants is by the multifarious utilization of discriminatory conducts, defamation of characters, libelous slander per se that has transpired for over an decade. Such as by utilizing marketing containing statements, photographs and or television commercials of falsity, to permanently damage the reputations of plaintiff. Amongst the multifarious, examples: During the marketing protocol by defendants they would utilize slanderous and defamatory comportments by the advertisement phrase E [accent acute] against plaintiff as an Hispanic. Definition – E [accent acute] is an early precursor of the acute accent was, the apex, used in Latin inscriptions to mark long vowels, names and personification; defendants also utilized E [accent acute] to demarcate defamatory initiatives against Civil Rights and Human Rights proponents.

- Plaintiff has experienced pervasive discriminatory conducts and defamation of character by NNA, this includes the utilization of a Nissan Maxima television commercial released on Superbowl, February of 2015, entitled "With Dad". Nissan made the commercial at contention "With Dad", by way of a latter date television commercial including a male actor of plaintiff's Hispanic appearance entitled "Day and Night" in April 2015.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 11 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

- Plaintiff is challenging that Nissan Maxima's television commercial "Day and Night" was made with defamatory and discriminatory content as the male actor resembling plaintiff's facial appearance was driving recklessly with negligent family concern, content. Whereas the "With Dad' commercial made with an Caucasian male actor , contained much more influential family concern than "Day and Night" which was made racially disproportionate. Upon datum "Day and Night" was televised as related to black persons as of Apr 6, 2016 on <u>BET</u> during Black Girls Rock! 2016 it continues to be aired on television worldwide. And the commercial yet remains in contrary opinion to the "With Dad" advertisement unabated;

- Predecessorily defendants have insulted the plaintiff's heritage as an un-groomed Hispanic male in the "Vibe 2007 magazine advertisement entitled "A black experience is everywhere" and the appearance of well-dressed male black persons in the Nissan television. Resultantly the defendants advertisements aimed its content at homophobic Hispanics/ males verses straight heterosexual male black persons in its marketing. In the end result, because of the substance of NNA's advertisements, plaintiff was and yet is defamatorily harmed. By way of co-workers, strangers, or persons that saw the defendants advertisements, for their appearance in the advertisements;

- Moreover that during the offences of NNA's marketing, the defendants relied on the fact that MJJ owns a Nissan dealership and is part of their marketing establishment and operations. Resultantly they participated together in a scheme relying on the wide spread established marketing values of MJJ, Scottie Pippen, B.J Armstrong, Chicago Bulls, the National Basketball Association. In this scenario defendants as basketball players were to be thought as sexually inspiring males for NNA's marketing  in the

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 12 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

contrary plaintiff was to be defiled. Aiding to this fact is that the defendants are renown for being the sexiest men alive, as black persons figurehead within the NBA. Resultantly, the defendants committed the defamatory wrongdoings against plaintiff and their heritage within their marketing evaluations by the way of radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline and in dealerships;

- Resultant to the marketing for Nissan and MJJ, they would utilize MJJ as the mainstay black person characterization, contentiously and prejudicially against Hispanic males such as plaintiff. In furtherance utilizing MJJ persona and aiding other black persons with his facial likeness of appearance contentiously and prejudicially verses Hispanics males. During their marketing situations the defendants would perpetrate nefarious discriminatory conducts and defamation of character to the detriment of plaintiff as an male Hispanic;

- Wherewithal Nissan and its affiliates experimented on plaintiff their heritage and amongst black persons in retrospect of the Tuskegee Study of Untreated Syphilis in the African American Male 1932 through 1972". In this reconsideration of plaintiff defendants marketing strategy was utilized for the systematic acquisition of the fatal disease sickle cell anemia upon plaintiff's heritage, which would cause fatalities by the system ends of the marketing operation. Utilizing it's marketing to extinct the certainty of plaintiff's heritage by disease acquisition, within the practice of eugenics and compulsory sterilization. At all levels of defendants marketing expecting a process of a detrimental result at the conclusion of their marketing results against plaintiff, Hispanics and black persons.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 13 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.                     Date: September of 2020                 Page 14 of 139
File at: SDNY

## **INTRODUCTION**

15.    The inception of defendants human experiments and discriminatory comportments against plaintiff began as plaintiff simply entered into the defendants 4 relevant automobile dealerships for chance of a new vehicle, whereby plaintiff's was fraudulently greeted and responded to by a white sales person under racial pretenses.

16.    In furtherance to the issue the white salesman would proffer plaintiff a sales price of a vehicle either used, new and/or leasing arrangement. At one point of this discussion with plaintiff the defendant would offer plaintiff $10.000.00 off of the sticker price of a previous year, new vehicle at $35,000. 00.

17.    That after the misleading pretenses by the white salesman defendants would utilized his misrepresentative practices of financing to another fraudulent process by way of an mandatory enforcement to a black person salesman, who also utilizes discrimination and deceptive financing standards for an higher price vehicle, based upon violating plaintiff's Civil Rights.

18.    In the process of the automobile transaction that the black salesman would state to plaintiff "the vehicle that the white salesman proffered was unavailable", "or was previously sold", "however there is a vehicle at a higher price and financing arrangement".

19.    More to this bias operation is that after the deceptive come on greeting by the white salesman, plaintiff would be enforced to deal with only the black salesman, the white salesman would only deal with white persons customers in the facial perspective of plaintiff and arrange a price for the vehicle plaintiff was initially instigated.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 14 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

20.    As a result both persons would under fraudulent pretenses, scheme upon plaintiff
for higher financing for the costs of a vehicle and discriminate based on plaintiff's
ethnicity and stress evaluation. In furtherance defendants intentionally utilized their
fraudulent financing processes to dissuade the purchase of a vehicle for compulsory
sterilization prices.

21.    Aiding to this sales approach by the defendants is stress factors, as; Later that
same day plaintiff would be imposed, and enforced into completing an financial
application by dealing with only a black salesman, under discriminatory and defamation
of character pretenses.

22.    Resultantly defendants by these imposed and enforced sales person
transformations, violated plaintiff's Civil Rights on 4 separate occasions. In furtherance
by perpetrating such an fraudulent financial arrangement, defendants instituted plaintiff
into a cause of racial inequality, defamation of character, fraud and misrepresentation.

23.    Within these fraudulent sales tactics and staff transformation comportments, the
black salesman, would mandatorily proffer an higher vehicle pricing and financing than
the white salesman as aforesaid. And by this means defendants utilized a systematic
discriminatory conduct based on financial capabilities against the plaintiff's Civil Rights.

24.    Furthermore during these 4 dealerships visits, plaintiff would be compulsorily
obligated into a discriminatory questionnaire protocol by defendants application
process. Such that defendants application process required information on plaintiff's
marriage status, age, race, sex, child status, disability and credit ratings etc... Upon
datum defendants demanded these prerequisites to utilize evidence of further
inequitable injustices based on plaintiff's Civil Rights.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 15 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

25.    Defendants found fact to detrimentally discriminate merely because plaintiff is an Hispanic, male heterosexual, at the time 45, single with no children, credit ratings in the tier of 700's. Resultantly after this information was founded defendants dealerships would instigate plaintiff into a higher than average priced vehicle and financing offer time and time again. Doing such because of plaintiff's status of being a (Single, Asiatic, Hispanic , male, 45 years of age, heterosexual, no children and having a higher tier credit rating of 700.

26.    As a direct and proximate result of these financing arrangements by defendants plaintiff's was indoctrinated into defendants discriminatory financial participation for their "human experimentation" procedures.

27.    Amongst many other offences by defendants, defendants discriminatory conducts transpired as plaintiff would merely happenstance into other systems of defendants discriminatory and human experimental comportments outside the dealership. Transpiring, by way of advertisements on within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline. For example: defendants called into question of their contradictory discriminatory beliefs, during the plaintiff' watching of a TV commercial from the Nissan "Titan" pickup television commercial.  As an explanation;

28.    Defendants ran a television commercial for the Titan pickup, which pointed out fascist music that has some unpleasant historical associations. The ad, titled "Pied Piper", showed several heavy trucks driving away to follow a Titan towing a boat. But the ad's background music was the theme from the 1957 movie "The Bridge on the River Kwai". In the movie, set during World War II, British prisoners of war are forced by brutal Japanese captors to build a railway bridge.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 16 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

29.    In furtherance as plaintiff would search for a Nissan vehicle, he would become defendants intended victim within an overall marketing campaign stratagem that utilized antecedent fascist beliefs of eugenics, compulsory sterilization, schemes to spread diseases in a systematic pattern and practice of offences.  As an example: Defendants included plaintiff into a marketing protocol that denied him automobile financing processes, unless participating in defendants enforcement of discriminatory conducts at the dealership, whereby the defendants deny plaintiff an vehicle.

30.    With that transpiring defendants also utilizes discriminatory participation of females of plaintiff's race(s) persuasion as models, actresses and audience participants within a widespread marketing process that pointedly regards them to advertisement slogans and phrases "Heritage", "Black Experience", "Diversity", "Change is Good" amongst others. All of which are terms highlighted, emphasized that relates to medical references of black persons, with negative eugenics, on behalf of persons with the fatal disease sickle cell anemia. That defendants race conversion is exemplified by marketing phrases "Heritage", "Black Experience", "Diversity", "Change is Good".

31.    Defendants have transpired their discriminatory comportments through their widespread marketing program via within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline from 2005 through 2016 as to date. Perpetrating such comportments of human experimental marketing without redress. Doing so as defendants have several times been notified of their irrespective defamatory and discriminatory conducts by plaintiff and others affected by defendants marketing departments. Such as by NYS Attorney Generals and community respondents, Nevertheless defendants pattern and practice of human experimental marketing campaign is without abatement under continuation, and yet continues against plaintiff in multifarious attributes,.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 17 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

32.     Resultantly plaintiff responds to defendants multifarious comportments of
Conspiracies, Discrimination, Defamation of Character, Libelous Slander Per Se,
Concealments and fraudulent financial practice utilized against plaintiff because of their
heritage *as* a male Hispanic, age, race, sex, gender and disabilities. In further this
lawsuit is to amends plaintiff for the defendants violations under the Civil Rights Act of
42 U.S.C. §§ 1981, 1983, 1985(3.) 42 U.S.C. § 1983 – First Amendment, U.S.
Constitution. Plaintiff claims is based upon the Equal Credit Opportunity Act. {ECOA},
15 USC 3 1691 ret seq.

## §5. PRESERVATION OF SECRECY, CONFIDENTIALITY OF THE COURT

33.     Plaintiff is requesting confidentiality of the Court withstanding all statements,
documents and distribution of public notices within or about the complaint hereto. That
the defendant parties be instructed in this discretionary ruling of the Court by way of
New York State Civil Practice Law Review - CPLR.

34.     Otherwise plaintiff requests §5. Preservation of Secrecy of the Court in an action
under the Trade Secret Act, that the Court shall preserve the secrecy of an alleged
trade secret by reasonable means, which may include granting protective orders in
connection with discovery proceedings, holding in camera hearings, sealing the records
of the action, and ordering any person involved in the litigation not to disclose an
alleged trade secret to from plaintiff's business practices, copyrighted materials; or any
matter hereto without prior approval by the plaintiff and the Court.

35.     Plaintiff protects all contents of this complaint as stated within and throughout as
the contents of this complaint is copyrighted © 2018 by Mario A. Thompson. Not to be
implied or expressed without consent, all rights reserved by the plaintiff.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 18 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Case 1:20-cv-08599-CM   Document 1   Filed 09/28/20   Page 19 of 139

Complaint no.                        Date: September of 2020              Page 19 of 139
File at: SDNY

## FACTS ON THE DEMISE OF AUTOMOBILE SALESMAN DANIEL BRANDT

36.     In the course of defendants discriminatory conducts against plaintiff there have
transpired numerous statements, facts and evidences on behalf of the assassination of



Photo of the deceased Daniel Brandt 2008.

37.     Daniel Brandt, 24, in the past he worked at an IOM auto dealership, He was a
salesman of IOM as of August 2008. He was well liked native Brooklyn, New Yorker.

38.     During the events leading up to his death he was lured, after he went to Coney
Island for a date with a woman he met online by Craig's List website.

39.     His untimely demise transpired as he thought he was going to meet a new
girlfriend at the Sea Rise apartment complex there. Instead, he was confronted by two
armed men around 1 a.m., police said.

40.     Resultantly plaintiff is requesting NYPD investigations and judicious activism
based upon the circumstances within this complaint

This lawsuit is based upon Attempted Murder,          **Mario A. Thompson**
Compulsory Sterilization, Eugenics, Genocide,              Plaintiff Pro Se
Human Experimentation, Civil Rights, Human                 P.O. Box 1004
Rights, Defamation of Character, Fraud and               New York, N.Y. 10163
Misrepresentation. The contents of this complaint       Phone: 646-377-6677
is copyrighted © 2020 by Mario A. Thompson.             Email: mat92878@gmail
Page no. 19 of 139

41.    Additionally plaintiff believes that Mr. Brandt pictured above, appears facially by skin color comparatively by photograph to plaintiff and his heritage.

42.    Plaintiff believes that Mr. Brandt was an eyewitness, knowledgeable and having evidenced defendants multifarious offences pertaining to the "human experimentation" discriminatory conducts and defamation of character perpetrated against the plaintiff at the automobile dealership IOM.

43.    In furtherance Daniel as a past salesman for IOM, at one point assisted plaintiff at the automobile dealership and having disagreement within the defendants illicit defamatory and discriminatory conducts. However, Mr. Brandt was thereafter assassinated after.

44.    Resultantly he became a plausible victimized participant because of defendant regards of the multifarious offences asserted by NNA et al. explained in the proceeding paragraphs, Additionally plaintiff believes that there was cause for his death by racial circumstances, by the defamatory victimization.

45.    Moreover to events before and after his untimely demise, on several occasions, plaintiff while pursuing the purchase and or leasing of a motor vehicle at both the Nissan and Infiniti dealerships plaintiff was proffered  by defendants dealership and management sales staffs to date by way of the website "Craig's List". That plaintiff was given "Craig's List" dating directives and or guidelines, as the circumstances for dating requirements, after vehicle ownership.

46.    Upon datum, Mr. Brandt's homicide took place after an alluring solicitation to blind date by way of "Craig's List". Upon datum in furtherance the "Craig List" references came from his employer at IOM in a premeditated disposition. Upon datum,

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 20 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

that Mr. Brandt's fatal blind date transpired after defendants at IOM would intentionally lead him to date on behalf of the website "Craig's List".

Note. However this Courts determination of this lawsuit plaintiff implements this case within consideration of the deceased Mr. Daniel Brandt, for response to his untimely demise by homicide. In his regards plaintiff is supporting the necessity of a thorough murder investigation by way of the New York Police Department and U.S. Attorney General's, Federal Civil Rights Act consideration on behalf of Mr. Brandt.

## HOW DEFENDANTS UTILIZED MULTIFARIOUS OFFENCES WITHIN THEIR MARKETING AT THE DEALERSHIP. SUCH AS BY DISCRIMINATORY CONDUCTS, DEFAMATION OF CHARACTER, FRAUDULENT FINANCING, TO ACHIEVE COMPULSORY STERILIZATION OUTCOMES

47.    Defendants "human experimental" marketing has been achieved by utilizing multifarious offences for the compulsory sterilization of plaintiff. Resultantly defendants have achieved this marketing aspect by the way of utilizing discriminatory conducts, defamation of character, fraudulent financing by the way of invalidating a legitimate automobile purchasing process of plaintiff, As examples;

48.    Defendants utilized their marketing operation within the practice of discriminatory conducts as plaintiff more than once has been discriminated as he merely went to each of the defendants 4 dealerships one after another.

49.    Resultantly, plaintiff was discriminatorily perpetrated upon during defendants process of purchasing a vehicle by racial marketing undertakings causing plaintiff a higher cost vehicle mark up.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 21 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

50.    Within these discrimination "patterns and practices" plaintiff was enforced to deal with only a black salesman, defendants would mandatorily proffer an higher vehicle pricing and financing. And by this means defendants utilized a systematic discriminatory conduct based on against plaintiff's Civil Rights.

51.    As a direct and proximate result of these 4 dealerships occurrences pattern and practices, plaintiff would be obligated into the defendants prerequisites of inequitable injustices based on plaintiff's martial pretenses with an automobile. In furtherance defendants utilized "human experimentation" processes and discriminatory conducts, which plaintiff has faced for defendant's racial compulsory sterilization processes.

### DEFENDANTS MULTIFARIOUS OFFENCES TRANSPIRED COLLECTIVELY UTILIZING RADIO, TELEVISION, SPORTS, MOVIES, SONGS, MOVIES, MUSIC VIDEOS, GAMES, MAGAZINES, INTERNET, BILLBOARDS, NEWSPAPERS, INSIDE THE AUTOMOBILE DEALERSHIPS, DIGITAL ONLINE AND OFFLINE.

52.    Upon datum defendants during the pretenses of "human experimental" marketing there have been performed multifarious offences this includes discriminatory conducts and defamation of character during their advertisement processes. In furtherance defendants advertisements by radio, magazines, internet, billboards, newspapers, digital offline and offline have contained discriminatory comportments in unison with it's TV commercials as well as demeanors inside the automobile dealerships.

53.    In the process of defendants discriminatory marketing campaign there was racially instituted an overall structure of objectives beyond the norm and standard of marketing procedures. Such as by to systematically operate within defendants discriminatory protocols to achieve "human experimentation" results by the way of marketing aimed towards against plaintiff and plaintiff's race;

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 22 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Case 1:20-cv-08599-CM   Document 1   Filed 09/28/20   Page 23 of 139

Complaint no.                    Date: September of 2020                    Page 23 of 139
File at: SDNY

54.    This above the norm includes marketing evaluations to instead promote and
process terms to relate to instigate the disease cell anemia while transparent.
Insinuating marketing for way of newcomers to acquire the disease and reflection on
those already ill assimilated with sickle cell anemia.

55.    Marketing such terms  and phrases as "DNA", "Heritage", "Shift" (Shift_Desire,
Dreams, and Passion,) "Black Experience", "Diversity", "Change is Good", E [acute
accent] and its other forms of "Hotness" Marketing, "Shift_Obstacles",
"Shift_Expectations", "Shift_The Future" "Shift_Forget About the Past" and
"Shift_"Innovation". Steve Wilhite SW, is or was the creator and director of the terms
Nissan "Shift_" and "Innovation" marketing campaigns. During the time of inception of
the campaign SW's title was vice president of marketing at NNA.

56.    Plaintiff is opposing defendants "human experimentation" marketing principles
which was utilized for comportments to dissimilate the detriment of eugenics,
compulsory sterilization, the disease sickle cell anemia to-against plaintiff and his
heritages.

57.    Because of defendants human experimental marketing procedures plaintiff has
been systematically perpetrated upon during the process of defendants utilization of
discriminatory conducts, defamation of character, libelous slander per se, fraudulent
practices whereby the end result of defendants offences has been for the detriment of
eugenics, compulsory sterilization processes, race conversion, schemes to spread the
diseases sickle cell anemia and aids.

58.    Resultant to the defendants institutionalized discriminatory and "human
experimentation" protocols as above said plaintiff charges that defendants
discriminatory policies, have been for conspiratorial violations not to publicly

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 23 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

accommodate the plaintiff

59.    Plaintiff seeks redress for defendants wrongful acts, separately and/or jointly, engaging in deceptive trade and business practices under New York General Business Law Sections §§ 349 and 350 against plaintiff; breach of implied contract, breach of obligation of good faith and fair dealing;

60.    Defendants to accomplish their multifarious offences have "willfully and wantonly" perpetrated schemes to defraud and misrepresentation plaintiff under New York City's Consumer Protection Laws and common laws as, dealers failed to adhere to strict rules and regulations regarding advertisements. For, but not limited to, higher than average car pricing based upon discriminatory policies and marketing (i.e. increasing the cost of the advertised car, add on, leasing agreements,) false advertising. Complainant was subjective to and For, but not limited to, (i.e. increasing the cost of the advertised car, add-ons, leasing agreements,) false advertising (i.e. advertising damaged or used cars as "new" and advertising cars that were unavailable at the time of purchase knowing that they would never be available, removing special finance incentives based on race,) false prices (i.e. listing "buy for" prices based on restricted rebates or requiring financing that automatically increases the cost of the advertised car,) failing to disclose required information. (i.e. license number, credit, and pricing information was not listed in a clear and conspicuous manner,) and misleading credit claims (i.e. listing "buy for" prices based on restricted rebates or requiring financing that automatically increases the cost of the advertised car, add-ons, leasing agreements.) 28 U.S. Code § 4101 28 U.S. Code § 4101.

**JURISDICTION AND VENUE**

61.    Venue is proper under 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3), and

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 24 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

supplemental jurisdiction for common law violations pursuant to 28 U.S.C. § 1367, as the common law claims form part of the same case or controversy.

62.    This is a lawsuit for Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, New York State Human Rights Law § 296 Failure to Accommodate in connection within their businesses, along with U.S.C. § 2000a(c)(4) Failure to Accommodate, Defamation 28 U.S. Code § 4101 and 42 U.S.C. § 1983 - First Amendment, U.S. Constitution. Plaintiff's is requesting pursuant to 42 U.S.C. § 1983, 28 U.S. Code § 1927, 22 U.S. C § 7102, and 34 U.S.C. § 10450 sanctions and levies upon the numerous defendants.

63.    Defendants can be found, is resident in and does business in the State and City of New York. Accordingly, This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a) since the amount in controversy exceeds $75,000 per plaintiff exclusive of interests and costs and there is diversity of citizenship. This Court has original jurisdiction pursuant EOCA USC § 1331 to hear claims based upon the ECOA.

## PARTIES

64.    Plaintiff, MARIO A. THOMPSON is an individual existing under the laws of the state of New York with his mailing located at P.O. Box 1004 New York N.Y. 10163. Plaintiff is owner of the Moon and planetary diversities. Plaintiff at the time of offences was without wife or child. Plaintiff was employed with MTA, NYCTA, now since terminated as a result of the defendants multifarious offences.

65.    Defendant, NISSAN NORTH AMERICA INC. (referred to as "NNA" or "NISSAN") is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business located at one Nissan way Franklin, TN. 37067 333

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 25 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.          Date: September of 2020          Page 26 of 139
File at: SDNY

Commerce Street, Nashville, TN. 41301. NNA manufactures various vehicles and markets itself by the name NISSAN.

66.     Defendant, CARLOS GHOSN (referred to as CG) NNA is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business located at one Nissan way Franklin, TN. 37067 333 Commerce Street, Nashville, TN. 41301. CG is past CEO of NNA which manufactures and markets various vehicles.

67.     Defendant, LEGACY INFINITI also known as ATLANTIC INFINITI INC. (referred to as by "LI and "AI") is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business located at 855 Sunrise Highway, Lynbrook, N.Y. 11563. LI was or is an automobile dealership for INFINITI.

68.     Defendant, KOEPPEL NISSAN INC. (referred to as "KN") is a domestic corporation existing under the laws of the state of Delaware with it's principal place of business located at 75-10 Northern Boulevard, Jackson Heights, N.Y. 11413. KN is an automobile dealership for parent company NNA.

69.     Defendant, INFINITI OF MANHATTAN INC. (referred to as "IOM) is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business located at 608 West 57th Street, New York, N.Y. 10019. IOM is an automobile dealership for parent company NNA.

70.     Defendant, NEMET AUTOCENTER-NISSAN INC. (referred to as "NAC-N") is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business located at Hillside Avenue and 153rd Street, Jamaica, N.Y. 11432. NAC-N is an automobile dealership for parent company NISSAN.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 26 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

71.    Defendant, INFINITI FINANCIAL SERVICES (referred to as "IFS") is a lending institution that finances Infiniti's vehicles. INFINITI FINANCIAL SERVICES INC. is a foreign corporation existing under the laws of the state of Delaware with it's principal place of business at P.O. Box 685003, Franklin, TN. 37068-5003. IFS is a corporation organized, existing, and doing business under the laws of the state of California. IFS is a subsidiary of Nissan Motor Corporation, USA . NMAC is the financial arm of Nissan Company, a worldwide Japanese conglomerate.

72.    Defendant, NISSAN MOTOR ACCEPTANCE CORPORATION (referred to as "NMAC") is a foreign corporation under the laws of the state of Delaware with it's principal place of business at 990 W. 1 901h Street, Torrance, California. NMAC is a corporation organized, existing, and doing business under the laws of the state of California. NMAC is a subsidiary of Nissan Motor Corporation, USA. NMAC is the financial arm of Nissan Company, a worldwide Japanese conglomerate.

73.    Defendant, MICHAEL J. JORDAN OWNER, OF THE CHARLOTTE HORNETS BASKETBALL TEAM (referred to as "MJJ") is a foreign corporation and exists under and by virtue of the state of North Carolina with it's principal place of business located at 333 East Trade Street Charlotte, North Carolina 28202.  MJJ NISSAN (referred to as "MJJ NISSAN") is a foreign corporation and exists under the state of North Carolina is located at 3930 Durham Chapel Hill Boulevard Directions Durham, NC 27707. MJJ, is owner of MJJ Nissan automobile dealership, the basketball team the Charlotte Hornets and co-owner of Jordan Brands clothing along with Nike Inc.

74.    Defendant, ESTATE OF JAMES R. JORDAN SR., (d. July 23, 1993) (referred to as "JRJS". On the subject of the estate and prior existence as JRJS. Is a central figure of his son MJJ, JRJS, the late father of the MJJ President of the basketball team the Charlotte Hornets of the NBA.  He was also a past employee of Nike, the DOD as Army

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 27 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

personnel.

75.     Defendant, MARK G. PARKER CHIEF EXECUTIVE OFFICER OF NIKE
(referred to as by "MGP and "NIKE".) together they operate as a foreign corporation
existing under the state of Oregon with it's principal place of business located at Nike
Store 1131 3rd Ave, New York, N.Y. 10065. MGP is the owner of the clothing and
sneaker manufacturer Nike and subsidiary Jordan Brand. Defendant, MJJ, is president
of the Jordan Brand subsidiary of Nike (referred to as "J Brand") is a corporation
existing under the state of Oregon with it's principal place of business located at Nike
Store 1131 3rd Ave, New York, N.Y. 10065.

76.     Defendant, NATIONAL BASKETBALL ASSOCIATION (referred to as the "NBA")
is  foreign corporation existing under and by virtue of the state of Delaware with it's
principal place of business located at NBA Commissioner NBA Corporate Office &
Headquarters Olympic Tower 645 5th Ave. New York, N.Y. 10022. The NBA is the head
office for all of the teams, league, within the NBA.

77.     Defendant, JERRY REINSDORF,  CHICAGO BULLS BASKETBALL TEAM
(referred to as by "JR", or "TCB") together they operate as a not for profit existing
under and by virtue of the state of Illinois with it's principal place of business located
at United Center 1901 West Madison Street Chicago, Illinois 60612-2459. The
Chicago Bull is a basketball team of the NBA.  Defendant, SCOTTIE M. PIPPEN of
the Chicago Bulls basketball team (referred to as "SMP") he operates as an employee
of TCB, together they exists as a not for profit under and by virtue of the state of
Illinois with it's principal place of business located at United Center 1901 West
Madison Street Chicago, Illinois 60612-2459. Scottie Pippen is an employee of the
basketball team TCB of the NBA. Defendant Benjamin R. Armstrong Jr. also known
as  "B.J." Armstrong of TCB basketball team (referred to as "BJA") operates as an

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 28 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

employee of TCB, together they exist as a not for profit under and by virtue of the state of Illinois with it's principal place of business located at United Center 1901 West Madison Street Chicago, Illinois 60612-2459. BJA is an employee of the basketball team Chicago Bulls of the NBA.

78.     Defendant JOSEPH LACOB majority owner (referred to as "JL"), Defendant PETER GUBER (referred to as "PG"), Defendant GSW SPORTS LLC., (referred to as "GSWS"), President's of the GOLDEN STATE WARRIORS INC. (referred to as by the "GSW") together the operates as a foreign corporation, domestic stock existing under the state of California is a corporation with their principal place of business located at 1011 Broadway Oakland, CA 94607. The Golden State Warriors is a basketball team of the NBA. Defendant WARDELL STEPHEN CURRY II (referred to as "WSC II") operates as an individual and sole proprietor. He now plays basketball for the GSW of the NBA. His principal place of business is located at 1011 Broadway Oakland, CA 94607. Defendant WARDELL DELL CURRY I (referred to as "WDC I") he operates as an individual. He is father of Stephen Curry the basketball player for the GSW of the NBA. He once played basketball for the San Antonio Spurs of the NBA. Defendant, CHRIS WEBBER III (referred to as "CWIII") he operates as an individual and sole proprietor, Chris Webber was a former basketball player for the basketball team GSW of the NBA. Defendant NICHOLAS A. YOUNG (referred to as the "NAY").  Defendant father of NAY (referred to as the "FONAY"). The defendants complete information for the lawsuit is under investigation.

79.     Defendant MANDALAY FILMED ENTERTAINMENT LLC (referred to as the "MDF"), Defendant, NATE PARKER FOUNDATION (referred to as the "NPF"). The defendant's complete information for the lawsuit is under investigation.

80.     Defendant DANIEL GILBERT (referred to as the "DG"), Defendant GORDON

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 29 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

GUND (referred to as the "GG"), CLEVELAND CAVALIERS (referred to as the "CC").
The defendants complete information for the lawsuit is under investigation.

81.     Defendant USHER RAYMOND IV (referred to as the "URIV"), Defendant
estate of USHER RAYMOND III" (referred to as the "URIII"), Defendant estate of
USHER RAYMOND II, Defendant (referred to as the "URII"). The defendants
complete information for the lawsuit is under investigation.

82.     Defendant LEBRON R. JAMES JR. (referred to as "LRJJ"), Defendant
FATHER OF LRRJJ, ANTHONY MCCLELLAND (referred to as "FOLRRJJ and or
AM"), Defendant FATHER OF LRRJJ, EDWARD "E" JACKSON (referred to as"
FOLRRJJ and or EEJ"). The defendants complete information for the lawsuit is under
investigation.

83.     Defendant TRISTAN T.J. THOMPSON (referred to as "TJT"), Defendant
FATHER OF TRISTAN T.J. THOMPSON (referred to as "FOTJT"). The defendants
complete information for the lawsuit is under investigation.

84.     Defendant WILLIAM L. ROBERTS II also known as RICK ROSS (referred to as
"RR"). Defendant FATHER OF RR (referred to as "FORR"). The defendants complete
information for the lawsuit is under investigation.

85.     Defendant TBWA\CHIAT\DAY, (referred to as "T\C\D") is foreign corporation
existing under the laws of the state of Delaware with it's principal place of business
located at 488 Madison Avenue, New York, N.Y. 10022. T\C\D is the advertisement firm
responsible for NNA's Global Accounts.

86.     Defendant THE TRUE AGENCY (referred to as "TTA") is a foreign corporation

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 30 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

existing under the laws of the state of Delaware with it's principal place of business located at 41 Great Jones St, Third Floor, New York, N.Y. 10012. TTA shares the advertisement account with T\C\D for NNA's, Global Accounts.

87.    Defendant, MASS TRANSPORTATION AUTHORITY (referred to as the "MTA") and NEW YORK CITY TRANSIT AUTHORITY (referred to as the "NYCTA") together are public benefactors and exists under and by virtue of the state of New York with it's principal place of business located at 370 Jay Street Brooklyn, N.Y. 11001. NYCTA is a service provider of mass transportation to the general public.

88.    Defendant S. CARTER ENTERPRISES LLC., (referred to as by "JAY- Z" OR "SCE") together they operate by way of a foreign limited liability companies existing under and by virtue within the state of Delaware, there principal place of business and executive offices located are at 1750 Broadway, New York, N.Y.  10019. Jay- Z works in every aspect of entertainment as an talent agent of athletes and artist, artist and repertoire, recording artists, music  producers, songwriters, music downloads.

89.    Defendant ESTATE OF ADNES REEVES (b. - 2003) - (referred to as AR) is the deceased father of JAY- Z. AR is father to JAY Z. He was an participant amongst others for the development of the scheme to spread diseases along with Bernard L. Madoff, NNA. The defendant's complete information for the lawsuit is under investigation.

90.    AR was a contributor of the many offences hereto complained about by way for SCE, Roc Nation, Tidal.com, Project Panther Bidco Ltd. 40/40 Club restaurant and nightclub. Upon datum that Madoff developed, and AR assisted within the scheme to market the spreading of diseases across Hispanics persons collectively utilized by Jay-Z, Island Def Jam Recordings, Universal Music Group, Kanye O. West, GOOD

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 31 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Music, NNA, MJJ, NBA, complained upon by the plaintiff.

91.    Defendant KANYE O. WEST, GOOD MUSIC (referred to as "KOW"") together
they operate as a foreign corporation existing under and by virtue of the state of
Delaware there principal place of business and executive offices are located at 1750
Broadway, New York, N.Y. 10019. KOW is a, rap artist singer, clothing designer and
owns his record company. KOW'S, GOOD Music, parent company is UMG and
distributors are Def Jam Recordings and Tidal.com.

92.    Defendant, ROC NATION LLC. (referred to as "RN") operates by way of a
foreign business corporation existing under and by virtue within the state of Delaware,
there principal place of business and executive offices located are at 1750 Broadway,
NY 10019 U.S. RN businesses comprises one of the world's dominant entertainment
enterprises. RN works in every aspect of entertainment as an talent agent of athletes
and artist, artist and repertoire, recording artists, music  producers, songwriters, music
downloads. RN musical artist are distributed by Island Def Jam Music Group which is
comprised of Island Records, Def Jam Recordings, and Mercury Records. Their
roster includes defendants  Rihanna, Justin Bieber, Kanye West, Big Sean, Ne-Yo,
NAS, Ludacris and more.

93.    Defendant UNIVERSAL MUSIC GROUP INC. (referred to as "UMG") it
operates as a foreign corporation existing under and by virtue of the laws to The state
of Delaware, it's principal place of business and executive offices mailing address is
located at /OCT Corporation System 111 Eighth Ave., New York, N.Y.  10011.
Website www.umg.com.

94.    UMG is the global music leader with strong market positions in recorded music,
music publishing, and merchandising. The recorded music business discovers and

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 32 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

develops recording artists and then markets and promotes their music across a wide array of formats and platforms. UMG's music publishing company, Universal Music Publishing Group, discovers and develops songwriters, and owns and administers copyrights to musical compositions for use in recordings, public performances, and related uses, such as films and advertisements. Bravado, UMG's merchandising company, sells artist and music branded products via multiple sales points including online, fashion retail, and live performances.

95.    Record Labels UMG's strength and legacy of music flows from a diverse family of record labels which include: A&M Recirds, Angel, Astralwerks, Blue Note Records, Capitol Christian Music Group, Capitol Records, Capitol Records Nashville, Caroline, Decca, Def Jam Recordings, Deutsche Grammophon, Disa, Emarcy, EMI Records Nashville, Fonovisa, Geffen Records, Harvest, Interscope Records, Island Records, Machete Music, Manhattan, MCA Nashville, Mercury Nashville, Mercury Records, Motown Records, Polydor Records, Republic Records, Show Dog–Universal Music, Universal Music Latino, Verve Music Group, Virgin Records, and Virgin EMI Records.

96.    Artist roster UMG's roster is comprised of artists covering the full spectrum of music around the world, making UMG the leader in both international and local repertoire.

97.    Merchandising Bravado is the only global, 360 degree full service merchandise company, develops and markets high-quality licensed merchandise to a world-wide audience. The company works closely with new and established entertainment clients, creating innovative products carefully tailored to each artist or brand. Product is sold on live tours, via selected retail outlets and through Web-based stores. Bravado also licenses rights to an extensive network of third-party licensees around the world. The company maintains offices in London, Los Angeles,

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 33 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

New York, Berlin, Paris, Tokyo and Sydney. Under the Universal Music Group
umbrella, Bravado is able to leverage a global sales and distribution network from
the world's largest record company, as well as the group's significant marketing
strength. Bravado clients include defendants Lady Gaga, Justin Bieber, Eminem,
Kanye West, Lil Wayne, Katy Perry, among many others as well as brands
TRUKFIT. For more information visit www.bravado.com.Universal Music Group &
Brands Universal Music Group & Brands (UMG&B) is the global brand partnership
and new business development arm of Universal Music Group.

98. UMG&B are music and partnership experts, creating innovative, tailor-made
business solutions for brands. UMG&B uses music and entertainment to create
innovative and differentiated customer propositions with our partners to help them
grow their business. UMG&B is a one-stop shop developing innovative
endorsements, sponsorships, premium deals, and strategic marketing partnerships.
FMI visit: www.universalmusicandbrands.com Distribution in the U.S., UMG
distribution manages the sales, marketing and distribution of Universal Music Group
assets in all formats including digital, physical, streaming, subscription and mobile.
The company has been the industry market share leader for the past fifteen years. In
some markets outside the U.S., UMG companies handle their own distribution and
sales. In other markets UMG companies have sub-contracted services to third
parties or entered into distribution joint ventures with other record companies.

99. Defendant SEAN M. L. ANDERSON also known as BIG SEAN (referred to as
"SMLA"). The defendant's complete information for the lawsuit is under investigation.

100. Defendant JEREMIH FELTON also known as JEREMIH (referred to as "JF").
The defendant's complete information for the lawsuit is under investigation.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 34 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

101.    Defendant ISLAND DEF JAM MUSIC GROUP INC. (referred to as "IDJMG") It
operates as a foreign corporation existing under the state of Delaware with their
principal place of business located at Island Def Jam Music Group Inc. It is comprised
of Island Records, Def Jam Recordings, and Mercury Records. Is a diverse group of
artists including defendants Justin Bieber, Kanye West, Mariah Carey, Rihanna, Ne-
Yo, NAS, Ludacris, Rick Ross, Andrew Hozier-Byrne.

102.    Defendant, SEAN JOHN COMBS also known as SEAN PUFFY COMBS, also
known as PUFF DADDY, also known as P-DIDDY, also known as DIDDY, BAD BOY
ENTERTAINMENT LLC. (referred to by as "SJC" or as by "BBE") together they
operate as a domestic limited liability company  existing under the laws to the state of
New York, with it's principal place of business and executive offices located at
Address 1710 Broadway, New York, N.Y. 10019. Bad Boy Records is a record
company. Defendant, FATHER OF DIDDY, ESTATE OF EARL M. COMBS, (d: 1972)
(referred to as "EMC"). The defendants complete information for the lawsuit is under
investigation. EMC is father to Diddy.Upon datum he was an informant to defendants
EOAR, Ivan F. Boesky, Bernard L. Madoff and the CIA.

103.    Defendants, JACQUES BERMAN WEBSTER II TRAVIS SCOTT, also known
as TRAVIS SCOTT (referred to as "TS"). Defendant, FATHER OF TS (referred to as
"FOTS"). The defendant's complete information for the lawsuit is under investigation.

104.    Defendant MIGOS (music group) QUAVIOUS K.MARSHALL also known as
QUAVO (referred to as "QKM "), KIRSNICK K. BALL also known as TAKEOFF
(referred to as "KKB"), KIARI K. CEPHUS also known as OFFSET, (referred to as
"KKC") (referred to collectively as the music group "MIGOS"). Each operates as
performing, rap artist within the music group MIGOS. The defendant's complete
information for the lawsuit is under investigation.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 35 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

105.    Defendant NBC UNIVERSAL INC. (referred to as "NBC U"). The defendant's
complete information for the lawsuit is under investigation.

106.    Defendant WILLIAM COSBY also known as BILL COSBY (referred to as "BC")
is a sole proprietor and existing under the state of California with his legal
representation located at the Law Offices of Thomas Meseresu Law Group 10100
Santa Monica Blvd. Suite 300, Los Angeles, California 90067, former The Pressley
Firm PLLC 1629 K Street NW, Suite 300 Washington, D.C. 20036. Bill Cosby, the
defendant's complete information for the lawsuit is under investigation.

107.    Defendant BERNARD L. MADOFF, (referred to as the "BLM") is a convicted
prisoner he is incarcerated existing under the state North Carolina Inmate #61727054,
his custodial prison is located at Butner Medium FCI, PO Box 1000, Butner, NC
27509. BLM is serving 2 consecutive life sentences for defrauding billions of dollars
from innocent victims. Upon datum that Madoff, developed the scheme to spread
diseases across Hispanics persons utilized by Nissan, MJJ, NBA, UMG, Island Def
Jam Recordings, Kanye West, GOOD Music complained upon by the plaintiff.

108.    Defendant, IVAN F. BOESKY, BOESKY, KINDER & PARTNER LIMITED
PARTNERSHIP, (referred to as "IFB" or as "BK&PLP") pleaded guilty to securities
fraud as part of a larger insider trading investigation. As part of his plea, Boesky
implicated Milken in several illegal transactions, including insider trading, stock
manipulation, fraud and stock parking (buying stocks for the benefit of another). This
led to an SEC probe of Drexel, as well as a separate criminal probe by Rudy Giuliani,
then U.S. Attorney for the SDNY.

109.    Defendant RAWLE H. ANDREWS SR. M.D. (referred to as "RHAS"),
the defendant's complete information for the lawsuit is under investigation.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 36 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

110.    Defendant RAWLE H. ANDREWS JR. M.D., (referred to as "RHAJ") The defendant's complete information for the lawsuit is under investigation.

111.    Defendant CONRAD MURRAY M.D. (referred to as" CM")
the defendant's complete information for the lawsuit is under investigation.

112.    Defendant PERCY R. MILLER also known as MASTER P. (referred to as "PRM"). Defendant FATHER OF MP, (referred to as "FOPRM").  The defendants complete information for the lawsuit is under investigation.

113.    Defendant BENJAMIN D.SIMMONS (referred to as "BDS"). Defendant FATHER OF BDS (referred to as "FOBDS"). The defendants complete information for the lawsuit is under investigation.

114.    Defendant ANTHONY M. DAVIS JR. (referred to as "AMDJ"). FATHER OF AMDJ, ANTHONY DAVIS JR. (referred to as "FOADJ). The defendants complete information for the lawsuit is under investigation.

115.    Defendant AARON A. GORDON (referred to as "AAG"), FATHER OF AARON A. GORDON (referred to as "FOAAG"). The defendant's complete information for the lawsuit is under investigation.

116.    Defendant ESTATE OF WILTON N. CHAMBERLAIN also known as (referred to as "WNC"). The defendant's complete information for the lawsuit is under investigation.

117.    Defendant CALVIN C. BROADUS JR. also known as SNOOP DOGG (referred to as "SD"). Defendant FATHER OF SD (referred to as "FOSD"). The defendants

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 37 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

complete information for the lawsuit is under investigation.

118.    Defendant KENYA BARRIS (referred to as "KB"). The defendant's complete information for the lawsuit is under investigation.

119.    Defendant BARACK H. OBAMA JR. (referred to as "BHOII"). Defendant father of BHOII, BARACK OBAMA SR. (referred to as "BOS"). The defendants complete information for the lawsuit is under investigation.

120.    Defendant LIEBERMAN BROADCASTING INC. (referred to as "LBI"). The defendant's complete information for the lawsuit is under investigation.

121.    Defendant JORGE ANTOLIN (referred to as "JA"). Defendant FATHER OF JA (referred to as "FOJA"). The defendant's complete information for the lawsuit is under investigation.

122.    Defendant JAMES E. HARDEN JR. also known as James Harden (referred to as "JEHJ"). Defendant father of JH (referred to as "FOJEHJ"). The defendants complete information for the lawsuit is under investigation.

123.    Defendant CHRISTOPHER E. PAUL also known as CHRIS PAUL (referred to as "CEP"). Defendant father of CP (referred to as "FOCP"). The defendants complete information for the lawsuit is under investigation.

124.    The remaining defendants are contributors to the offences, various firms, corporations and other persons, known and unknown and not named as defendants hereto, including without limitation the unnamed have participated with the defendants in the violations alleged in this complaint and have performed acts in furtherance

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 38 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

thereof by and for as defendants. Plaintiff does not yet know the true names, identities, or locations of the defendants presently unknown accordingly to the unlawful acts within this complaint, and therefore these defendants remain unknown. Plaintiff will amend the complaint to add future names when such names are ascertained.

## INFORMATIVE TO ALL COUNTS

125.    Defendants Nissan, NILT and 4 of Nissan automobile dealerships have systematically utilized "human experimentation", institutionalized discriminatory conducts and defamation of character strategies against plaintiff., As an explanation;

126.    Plaintiff in or about June 2005 an official at KN so conspired to remove Mr. Thompson's affiliation with white sales persons. The biased incident took place while in the midst of a contractual discussion for a Nissan Murano SUV. Moreover, to the defendants actions plaintiff lost all rights, verbal agreements and privileges after the vehicle transaction was thoroughly discussed with the white sales person.

127.    In the course of the defendants systematic, biased, operation plaintiff would be disallowed and prohibited to speak or deal with a white salesman after their initiating of a beneficial automobile pricing offer and contracts. After several facial gestures by either a white sales manager or black sales person resultantly the beneficial pricing offer by the white salesman would be removed. As plaintiff was told to wait and to proffer new automobile negotiations with a black salesman, that in the course of events solicited higher pricing standards than the previous white sales person. plaintiff In the transaction with the black salesman would be told the previous automobile offer by the white sales man was not available or misinformation.

128.    Within the defendants discriminatory processes plaintiff would be methodically

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 39 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

ignored and un-accommodated by the white sales persons. The white salesman would speak to the dealership manager, falsely claim to go to lunch or work with another white person client by phone (in the eye view perspective of the plaintiff. defendant white salesman would at some stage discriminatorily participate in auto sales directly with selective clientele white persons. These aforesaid systematic discriminatory comportments transpired against plaintiff from automobile dealership to dealership.

129.    Defendants IOM automobile dealerships has systematically utilized institutionalized discriminatory conducts and defamation of character strategies during the course of financing a vehicle against plaintiff., As an explanation;

130.    Amongst the aforesaid facts on the dates of November 2005 through June 29, 2006 plaintiff began vehicle shopping for the purchase or lease of a brand new Infiniti and Nissan automotive product but through the numerous occasions plaintiff has experienced discriminatory conducts and improper discriminatory accommodations.

131.    Defendant would utilize its systematic discriminatory comportments against plaintiff during the course of negotiating and financing a vehicle.  Resultantly defendant would find fault to transform banking fees, higher financing rates, during the course of this transaction before and after the lease agreement, not normally performed against white persons.

132.    As another explanation of defendants problematic financing processes not normally performed against white persons, plaintiff would eventually request a lease of a vehicle for a year from IOM on about June of 2006. During the process of the leasing arrangement defendants mandated plaintiff to endure stressful processes by way of changing the financing agreement for no apparent reason at every cause of action before the lease agreement could be finalized.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 40 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

133.    Whilst under this duress plaintiff leased the vehicle on or about June 29, 2006
and kept it through January 2008. NILT account no. 2900- 9208-056. plaintiff's lease
expired January 2008. Plaintiff's prior automobile lessee to auto Vehicle Identification
Number (VIN): JNRA808WX6X205641, from Infiniti NILT and IOM. A copy of plaintiff's
VIN no. is Attached as Exhibit A.

134.    As a direct and proximate result of the lease agreement defendants would
systematically retaliate by way of late payment notifications, multifarious repair
problems, missing parts to the automobile and causing of payment delays to remove
plaintiff's credit ratings.

135.    Plaintiff has been to 4 separate dealerships, which includes 2 Nissan dealerships
NAC-N AUTOCENTER, KN and 2 Infiniti dealerships which are IOM and LI (collectively
owned and or operated by "white persons" and employed with "black persons".)

136.    Defendants 4 separate dealerships employed the following personnel Roman
Scott is a black person who was or remains  an automobile salesperson employed at
NAC-N Motors; Steve Kirkman is a white person who  was or remains as the marketing
Director at NAC-N Motors; Mary Jane is a white person who  was or remains a sales
manager at KN; Philip N. Ledford is a black person who was or remains a salesperson
at LI; the year 2006 Frank was the Finance Manager of IOM he is a white person who
was or remains the finance manager at IOM  (Collectively "white persons" and "black
persons" who were in responsibility for the conducts mutual to all counts).

137.    Defendant MJJ is a black person and owner of a Nissan automobile dealership,
resultantly participating with NNA's corporate marketing operations and comportments
described within this complaint and is in responsibility for the conducts mutual to all
counts.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 41 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

138.   Defendant Steven Wlhite SW is NNA's Director of Marketing he is a white person
resultantly terminated by Nissan. SW, is the creator and director of the Nissan Shift_
marketing campaign and former vice president of marketing at NNA at the time.  Upon
datum Wilhite was terminated by Nissan non-disclosed for the comportments of
discriminatory conducts and  defamation of character described within this complaint
and in responsibility for the conducts mutual to all counts.

139.   Daniel Brandt was a sales consultant at IOM (in recognition of this complaint and
of plaintiff's having been in recognition of the multifarious discriminatory conducts at the
dealerships.

140.   Daniel was a critical witness to the discriminatory events has now since, by
unknown assailants, been murdered after solicitations to date by way of "Craigs List"
from his past employer IOM. By several of the other automobile dealerships,
defendants, plaintiff was also solicited to date on behalf of "Craig's List".

## DEFENDANT'S HUMAN EXPERIMENTATION MARKETING CAPABILITY

141.   Plaintiff is charging that defendants implement a discriminatory marketing
protocol by way of their marketing campaign(s,) both, at the corporate marketing level
for (within radio, television, sports, movies, songs, movies, music videos, games,
magazines, internet, billboards, newspapers, digital online and offline and at the
defendants automobile dealerships. As an example amongst others;

142.   Plaintiff complains that they were harmed by NNA's corporate marketing system
of utilizing their advertisement slogans and phrases for describing discriminatory
conducts, scientific policies and of negative eugenics".

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 42 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

143.    Perpetrating the adage by way of  "DNA", "Heritage", "Shift" (Shift_Desire, Dreams, and Passion,) "Black Experience", "Diversity", "Change is Good", E [acute accent], "Hotness" Marketing, "Shift_Obstacles", "Shift_Expectations", "Shift_The Future" "Shift_Forget About the Past" and "Shift_"Innovation". In furtherance the term Shift_ resembles the cryptographic meaning for  "fascism".

144.    Within this policy of Negative eugenics defendants marketing campaigned both, at the defendants automobile dealerships and at the corporate level within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline aimed at lowering fertility among the plaintiff's ethnic population whilst expecting the exploiting of diseases to the female persuasion of plaintiff.

145.    This marketing plan by defendants includes the use to negate or vehicle ownership to Hispanic Males resultantly the loss of dating, marriage, family inclusion, planning, compulsory sterilization, and other eugenic methodology.

146.    Alongside defendants during this marketing process utilized analytical coercive properties to assert that Black Persons with the disease sickle cell anemia is more profitable for dating, marriage, family inclusion, planning.

147.    Resultantly defendants marketed with the systematic competences of negative eugenics for how the disease sickle cell anemia is acquired.

148.    Defendants marketing was based upon several other detrimental "patterns and practices" inclusively, fraudulent schemes, defamation of character, libelous slander per se, race conversion, miscegenation and eugenics.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 43 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

149.    Plaintiff on behalf of themselves and others unknown was thereby implemented into defendants detrimental marketing procedures.

150.    Resultantly plaintiff's seeks, monetary and punitive damages as defendants marketing consisted of the multifarious offences stated here within the complaint.

## BACKGROUND ON DEFENDANTS HUMAN EXPERIMENTATION BY THE PRACTICING OF COMPULSORY STERILIZATION AND EUGENICS

151.    Plaintiff is charging that at one point defendants assembled its marketing for scientific and experimental processes at the detrimental expense of plaintiff heritages Hispanic and was targeted for such:

152.    That defendants marketing structure was situated inside of similar distinctions of past detriments of eugenic profiling, racial sterilization practiced inside of America.

Note:  The American Eugenics Society promoted ideas of racial betterment and genetic education through public lectures, conferences, publications and exhibits at county and state fairs like the chart labeled "The Triangle of Life" from the Kansas Free Fair. American Philosophical Society.  See reference chart below to The Triangle of Life.

The movement considered many other attributes to be hereditary from feeble-mindedness, pauperism and criminality to promiscuity among women and even love of the sea. Love of the sea was pretty much a curiosity, but people with the rest of those "undesired" traits were in the sights of the movement as it sought to prevent them from marrying or having children, often through forced or coerced sterilization.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 44 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.  Date: September of 2020  Page 45 of 139
File at: SDNY

The scrapbook, pictured above, at the American Philosophical Society features eugenics activities at several state fairs: public presentations, examination buildings and "fitter family contests".  Plaintiff believes that there was artistic inspiration from American Philosophical Society beliefs within the graphic designs of NNA's marketing. See NNA's marketing design within pages 96 through 101.



153.    That defendants marketing utilized similar distinctions of graphics, references to eugenics, racial sterilization to be practiced upon the plaintiff, within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

154.    As a result plaintiff is charging that at one point of the defendants marketing structure was situated inside of comportments of eugenics, summarizing and following compulsory sterilization procedures as in Nazi Germany;

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 45 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note:  Another similar distinction and hypothesis of plaintiff's contention against the nefarious apportioning by defendants is made from the past. Comparably as "Racism and Sexism in Nazi Germany: Motherhood, Compulsory Sterilization and the State", as sexist racism versus racist sexism.

Sexist racism meaning that non-Aryan women were "prohibited" from procreating because of their "inferior" race. Racist sexism meaning that Aryan women were urged to procreate as members of the "superior" race;

However, Nazi propaganda geared to either inhibit or promote reproduction were one and the same: Compulsory sterilization programs are public policies which attempt to force people to undergo sterilization.

In the first half of the twentieth century, many such programs were instituted in many countries around the world, usually as part of eugenics programs intended to prevent the reproduction and multiplication of members of the population considered to be carriers of defective genetic traits.

155.    Resultantly to these recidivist stimuluses, amongst other causes, defendants have utilized multifarious offences to promote and enforce ethnic persons into eugenics, compulsory sterilization, a higher rating of disease calipers.

156.    As a direct and proximate result defendants intended there marketing to promote reproduction standards as inhibitor based on compulsory sterilization and adage of the disease sickle cell anemia to Hispanics.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 46 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

157.    In one foundation, example by such marketing, NNA geared it's automobile sales
amongst transpiring media events of the defendants.

158.    Whereby plaintiffs were harmed by NNA' combined marketing system of utilizing
detrimental financing arrangements, dealership discriminatory conducts. Alongside
distributing of marketing containing defamatory pictorials of Hispanics, advertisements,
ad slogans and phrases for discriminatory conducts and defamation of character
practices against plaintiff.

159.    For example of the slogans, phrases: "DNA", "Heritage", "Shift" (Shift_Desire,
Dreams, and Passion,) "Black Experience", "Diversity", "Change is Good", E [acute
accent], "Hotness" Marketing, "Shift_Obstacles", "Shift_Expectations", "Shift_The
Future" "Shift_Forget About the Past" and "Shift_"Innovation" are marketing phrases
utilized for describing the capabilities of eugenics, compulsory sterilization and
dissemination of the spreading of the disease sickle cell anemia by Nissan".

### DEFENDANTS COMPULSORY STERILAIZATION PROCESSES

160.    Against the plaintiff Nissan has utilized compulsory sterilization programs which
are public policies that force people to undergo compulsory sterilization by the denial of
the allowance of legitimate financing for an automobile (for heterosexual dating or
marriage purposes to Hispanics.) Compulsory sterilization programs are public policies
which attempt to force people to undergo sterilization, removal of child bearing
processes.

161.    As a direct and proximate result Nissan utilizes fraudulent financing capabilities
to dissuade, proper vehicle ownership based on compulsory sterilization processes (for
heterosexual dating or marriage purposes to Hispanics.)

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 47 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

162.    In furtherance Nissan has utilized eugenics programs intended to prevent the
reproduction and multiplication of members of the population considered to be carriers
of healthy traits, Hispanics persons which are plaintiff's racial background.

163.    At the dealership defendants intentionally utilized their fraudulent financing and
marketing policies enjoined with multifarious discriminatory conducts that were to forbid
the purchase of their products.

164.    Resultantly defendants could prohibit and disenfranchise the vehicle advantages
and usages for of expectant heterosexual dating, male dowry appearances (by way of
vehicle leases or ownership) and/or precipitous marriage security.

165.    In furtherance defendants placed compulsory abstinence capabilities and
population control measures to bar appropriate procreation ideals by plaintiff's Hispanic
heritages.

166.    As a direct and proximate result defendants insulated themselves to insure and
block contemporary forms of vehicle ownership, on behalf of good and secure
transportation sensibilities for dating and marriage by plaintiff's heritage.

167.    And during this compulsory sterilization process defendants by their application
query process of plaintiff's credit ratings and/or vehicle purchasing requirements, was
obligated into a discriminatory questionnaire protocol. Demanding prerequisites of his
age, sex, marital and child status.

168.    Finding fact that plaintiff is a Hispanic male heterosexual and was at the time 45,
single with no children. Thereby defendants instigated a higher than average priced
vehicle and financing time and time again for the Claimant's status of being a (Hispanic,

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 48 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Cuban, male, 45 years old, heterosexual, no children.

169.    Furthermore defendants by their application process, would produce specific
characteristics for and through plaintiff's family history that benefited defendants
monitoring of capabilities for dating, marital processes by race, dowry, child barring,
compulsory sterilization procedurals.

170.    As a direct and proximate result defendants have ascertained the plaintiff's
background information heritage, driver's license and photograph, which is also
acquiesced and sent to financing companies for discriminatory purposes.

171.    In furtherance NMAC has demonstrated that it is fully capable of obtaining
information regarding the race of its customers through driver's records and other
methods of racial identification.

**PLAINTIFF'S VISITATIONS TO DEFENDANTS AUTOMOBILE DEALERSHIPS**

172.    During the defendants human experimental marketing efforts, plaintiff made 4
separate visits to defendant's automobile dealerships NAC-N AUTOCENTER, KN, LI,
and IOM.

173.    Thereafter defendants have mandated and conspired upon plaintiff to speak only
to  a black salesman for a higher than average cost of purchasing or leasing of a
vehicle as compared to Caucasian - auto consumers.

174.    As a direct and proximate result defendants discriminated on the plaintiff based
upon human experimental processes by way of automobile sales either to negate
plaintiff an legitimate automobile financing arrangement for the pretenses of compulsory

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 49 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

sterilization as the end result and reasonably include plaintiff into the defendants process of reproduction standards to dispersion the fatal disease sickle cell anemia to the race of plaintiff's female heritage(s.)

## ABOUT THE DISEASES SICKLE CELL ANEMIA AND AIDS

175.     Defendants have instituted plaintiff into a multifaceted discriminatory marketing scheme whereas: plaintiff was harmed by defendants marketing standards so that the defendant's could exercise the deceptive practice of exploiting and spreading of diseases predominantly identified with African American males sickle cell anemia, aids and or human immunodeficiency virus – (HIV) throughout plaintiff's female heritages or as similar appearances that would substantiate medical risks during  heritage reproduction. Accordingly to the Mayo Clinic (located at website www.mayocliniic.org/) sickle cell anemia is an inherited form of anemia - a condition in which there aren't enough healthy red blood cells to carry oxygen throughout your body. The sickle cell gene is passed from generation to generation in a pattern of inheritance called autosomal recessive inheritance. This means that both the mother and the father must pass on the defective form of the gene for a child to be affected. Most often, sickle cell disease is passed down the family tree by parents who have the sickle cell trait. Two carriers have a 25% percent chance of having an unaffected child with normal hemoglobin, a 50% percent chance of having a child who also is a carrier, and a 25 % percent chance of having a child with sickle cell anemia. These chances are the same in each pregnancy. Risk factors The risk of inheriting sickle cell anemia really comes down to genetics. For a baby to be born with sickle cell anemia, both parents have to carry the sickle cell gene.

176.     Defendants marketing identified healthy individuals at risk of developing a genetic disorder themselves, or of having a child with a genetic condition as an

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 50 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

explanation; From the Center for Disease Control and Prevention ("CDC") (located at website www.cdc.gov) Contrary to popular conception, sickle-cell disease does not affect only African Americans. In fact, sickle-cell disease can be genetically transmitted across populations to the offspring of any two parents who carry the sickle-cell gene. Only individuals, who inherit two copies of the sickle-cell gene, one from their father and one from their mother, contract the illness. People who inherit one sickle-cell gene and one normal hemoglobin gene have what is known as the sickle-cell trait. Some people inherit one sickle cell gene and one defective hemoglobin gene of another type, resulting in various types of sickling disorders. These disorders range from mild to severe. Sickle cell disease (hemoglobin SS disease) occurs when both genes produce hemoglobin S. This person typically has symptoms of anemia, mild to life-threatening complications. Sickle beta-thalassemia occurs when a person has one hemoglobin S gene and another gene that causes the body to produce less hemoglobin than normal. This person may have mild to severe sickle cell anemia. Hemoglobin SC disease occurs when a person has one hemoglobin S gene and one abnormal hemoglobin C gene. This person may have generally milder symptoms than a person with sickle cell disease but may become seriously ill nonetheless. Hemoglobin SO disease and hemoglobin SD disease occur when a person has one hemoglobin S gene and one abnormal hemoglobin O or hemoglobin D gene. This person may experience all sickle cell disease symptoms, ranging from mild to severe.

177.    Definition from the CDC - AIDS is a chronic, life-threatening condition caused by the human immunodeficiency virus (HIV). By damaging your immune system, HIV interferes with your body's ability to fight off viruses, bacteria and fungi that cause disease. HIV makes you more susceptible to certain types of cancers and to infections your body would normally resist, such as pneumonia and meningitis. The virus and the infection itself are known as HIV. "Acquired immunodeficiency syndrome (AIDS)" is the name given to the later stages of an HIV infection. How HIV is transmitted; You can

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 51 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

become infected with HIV in several ways, including: Sexual transmission,
Transmission through infected blood Transmission through needle sharing,
Transmission through accidental needle sticks. Transmission from mother to child.
Strategies include monitoring the epidemic to target prevention and care activities,
researching the effectiveness of prevention methods, funding local prevention efforts for
high-risk communities, and fostering linkages with care and treatment programs. CDC
is working in collaboration with many other governmental and nongovernmental
partners at all levels to implement, evaluate, and further develop and strengthen
effective HIV prevention efforts nationwide. CDC also is providing financial and
technical support for disease surveillance; HIV antibody counseling, testing, and referral
services; partner counseling and referral services; street and community outreach; risk-
reduction counseling; prevention case management; prevention and treatment of other
sexually transmitted diseases that can increase risks for HIV transmission; public
information and education; school-based education on AIDS; international research
studies; technology transfer systems; organizational capacity building; and program-
relevant behavioral, and evaluation research.

178.    Plaintiff stresses that defendants marketing campaign has been contrived for the
        explicit benefiting of specialized demographic racial patterns by way of behavioral,
        assumptions to ensure the impact of the discriminatory marketing system ends and or
        projected analytical predictions of futuristic behavior patterns by health assumptions.

179.    As a direct and proximate result defendants marketing consisted of assessing
        harmful risks associated with acquiring the diseases sickle cell anemia, aids and the
        inconsiderate demise of human life thereafter.

180.    In furtherance defendants geared automobile sales to either inhibit or promote
        reproduction standards based on compulsory sterilization inclusion of plaintiff. Such as

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 52 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

by charging plaintiff's by age, race, sex, higher vehicle costs at the dealership verses lesser costs to others.

## DEFENDANTS HAVE UTILIZED THERE AUTOMOBILE MARKETING AND FINANCING TO MISCEGENATION HISPANIC FEMALES WITH BLACK PERSONS MALES TO DISSIMILATE THE DISEASES SICKLE CELL ANEMIA, AIDS

181.    Defendants have utilized there marketing and automobile financing protocols for forced miscegenation of Hispanic and/or ethnic  females and black males consumers together, resultantly to bare children and spread diseases accomplishing such by way of explanation;

182.    Utilizing there marketing for the facilitating and promoting of un-regulated miscegenation (mixed heritages for co-habitation) to spread diseases by way of promoting dating and marital enjoinment of female race categories Hispanic's, persons with black males at a higher rate of health risks.

183.    As a direct and proximate result defendants utilized there marketing for reproduction standards based on eugenics and compulsory inclusion.

## DEFENDANTS UTILIZED HUMAN EXPERIMENTAL MARKETING PURPOSES AS COMPARED TO THE "TUSKEGEE STUDY OF UNTREATED SYPHILIS IN BLACK PERSONS (AFRICAN AMERICAN MALES) 1932 THROUGH 1972"

184.    Plaintiff contends that that the framework of defendants marketing was inclusive of discriminatory conducts and illusory exploitation ideals that many African Americans have grown up knowing about. Citing a similarity to the infamous 'Tuskegee' experiment as the basis for plaintiff's beliefs ("Tuskegee Study of Untreated Syphilis in

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 53 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

the Negro Male".) in this exception it is diseases sickle cell anemia and aids. The so called 'Tuskegee' research Conducted by the US government between 1932 and 1972, the experiment enrolled 600 black men only 399 became participants with syphilis and told them they were being treated for their condition with a new drug. Resultantly patients were given free medical exams, free meals, and burial insurance as recompense for their participation and were told they would be treated for "bad blood". Bad Blood is a term in use at the time referring to a number of ailments including syphilis, when, in fact, they did not receive proper treatment and were not informed that the study aimed to document the progression of syphilis *without* treatment. Penicillin was considered the standard treatment by 1947, but this treatment was never offered to the men.

185.     In fact they did not receive proper treatment, the scientists running the study were actually giving the men a totally ineffective placebo so they could study the natural course of the disease all the way through to death. Penicillin was considered the standard treatment by 1947, but this treatment was never offered to the men. Researchers took steps to ensure that participants would not receive proper treatment in order to advance the objectives of the study Although originally projected to last 6 months, the study actually went on for 40 years.

186.     In this case of defendants human experiment, by NNA's, marketing, it exists by their corporate discriminatory marketing conducts within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline along with the defendant auto dealerships. As an example: The defendants would clandestinely utilize their black employees, (black auto salesmen and black television commercial actors) discriminatorily and experimentally. (Analyzing consumer shopping patterns by marketing persuasion and, medical risk assumptions for the dissemination of the disease sickle cell anemia, and or aids.)

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 54 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Resultantly to defendants conducts plaintiff was enforced into marketing comportments for the purpose of compulsory sterilization.

187.    Furthermore defendant auto salesmen who are black persons and are by heritage at a higher risk categorization and accumulative to the diseases sickle cell anemia and aids would (by themselves and or by direct marketing orders from employers (Nissan, Infiniti, NILT corporate headquarters and the auto dealerships) would racially discriminate upon the plaintiff (by requesting higher price of an automobile) at face value at the dealership. THIS OCCURRED AMONGST TRANSPIRING WIDESPREAD DISCRIMINATORY MARKETING OF WITHIN RADIO, TELEVISION, SPORTS, MOVIES, SONGS, MOVIES, MUSIC VIDEOS, GAMES, MAGAZINES, INTERNET, BILLBOARDS, NEWSPAPERS, DIGITAL ONLINE AND OFFLINE AGAINST PLAINTIFF AND THEIR RACE.

188.    While within the aforesaid discriminatory occurrences transpiring against the plaintiff, the black salesmen were knowledgeably discriminated upon by Nissan and at a higher risk categorizing of the disease sickle cell anemia itself.

189.    Resultantly the black salesmen would thereby be utilized for NNA's perpetrating of spreading diseases by marketing analysis.

190.    At each interval defendants have discriminated on the plaintiff and at every stage there marketing inclusion was used for sterilization and higher risk classifying for the proliferation of the diseases sickle cell anemia and aids (and on the general public by way of these conducts.)

191.    As a result that the defendants discriminatory offences transpired at each and every level of the executive decision making at NNA, NILT corporate headquarters and

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 55 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

at the auto dealerships.

## MALE HISPANIC PERSONS ARE CHARGED HIGHER VEHICLE COSTS AT THE AUTOMOBILE DEALERSHIP COMPARABLY TO CAUCASIAN WHITE PERSONS

192.     Additionally plaintiff has been to 1 automobile dealership defendant IOM, enjoined with NILT financing who has mandated plaintiff to lease his vehicle at a higher than average cost of leasing an automobile. Such as by instituting substantially high "banking fees" and "finance charge" systems for discriminatory policies and fraudulent practices.

193.     Defendants have established and used a discriminatory and fraudulent credit pricing system, referred to herein as "Finance Charge" systems and monetary lending practices referred to herein as "Bank Fees".

194.     Plaintiff contends that NILT's "Bank Fee" and "Finance Charge" system is unlawful because the system effects unlawful discrimination in that minorities are charged higher charges than similarly situated white customers and in violation of the Equal Credit Opportunity Act; plaintiff believes that they were harmed by NILT's and Manhattan of Infiniti "Bank Fees" and "Finance Charge" system. plaintiff seeks, money damages injunctive and equitable relief.

## PLAINTIFF MADE COMPLAINTS TO THE DEFENDANTS IN THE PAST

195.     Due to the defendants discriminatory marketing processes plaintiff in the past has personally called and written letters of complaint to NNA and to their affiliated dealerships describing the immense discriminatory conducts of their marketing occasions.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 56 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

196.    Defendants have not responded to plaintiff complaints in regards to this
immersion into defendants discriminatory conducts and emotional distresses. As a
direct and proximate result of complaining about defendant's discriminatory practices
plaintiff would face new procedures of discriminatory conducts by way of retaliations.
that have transpired for over an decade and as to date.

197.    Plaintiff received a letter from Sharon White Consumer Affairs Regional
Specialist Nissan stating that they were aware of plaintiff's complaints.

198.    Plaintiff's attained injury as participant of the events of World Trade Center
(WTC) on September 11, 2001 plaintiff would work for the NYCTA at the disaster area
of 9/11.

199.    Plaintiff has been in perspective of the detrimental causes of these matters for
more than a decade.

### **ABOUT NILT**

200.    NILT engages in the business of financing vehicles throughout the U.S., through
dealer and agents who serve as NILT's credit arrangers originators. NMAC finances
more than 100,000 vehicles annually, all through its dealer arrangers/originators.

201.    NILT promotes and advertises its financing and vehicle loans which are provided
by dealerships within 1200 Nissan dealerships nationwide.

202.    Consumers in New York and throughout the U.S. are able to procure NILT
vehicle financing.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 57 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

203.    NILT buy rates, bank fees, credit risk tiers, finance charge markup limits, credit
worthiness requirements, credit approval process, retail installment contract forms,
approval notification form, and application forms are applicable throughout the U.S. .

204.    NILT provides training to dealers, including training regarding "basic selling
techniques". One of the job duties of NILT's sales representatives is to "Assess training
needs in assigned dealerships and provide appropriate training in product knowledge
and basic selling techniques to dealer personnel".

205.    NILT makes automobile loans throughout the U.S. through Nissan dealers, who
refer customers to NILT and effectively serve as loan arrangers. Nissan dealers submit
credit applications to NILT, as well as other lenders, on behalf of customers using a
credit scoring system, assigns applicants to a credit risk category.

206.    As for each loan there is a risk category, NILT sets a range of acceptable interest
rates. The lowest acceptable rate is called the "buy rate". A dealer may move a
customer to a more expensive risk category (or "tier"), but not to a less expensive one.

207.    If the dealer charges only the buy rate, it receives a flat fee of approximately
$150 for its participation in the transaction. If the dealer charges an interest rate above
the buy rate (effectively an overage), NILT and the dealer split the discretionary finance
charge with approximately ¾ going to the dealer. For certain promotional programs, a
dealer may be permitted to charge customers only the buy rate. NILT contends that the
dealers set the discretionary finance charge based on their own

208.    Defendants utilizes a Finance Charge Markup system and an acquisition fee,
sometimes called a "Bank Fee" that is often a negotiable administration fee charged by
the leasing company NILT. Although the lease company can set this fee, it is common

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 58 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

for dealers to "bump" this fee to consumers or add a little extra profit for themselves.

## ABOUT NISSAN INFINITI MARKETING

209.    NNA is the parent company that manufactures vehicles, distributes and markets
for all of Nissan and Infiniti dealerships marketing therewith on a contractual and
expectant basis for all of Nissan and Infiniti dealerships. It is there responsibility for the
over all marketing conducts withstanding their products and dealerships complained
about (collectively "white persons" and "black persons".)

210.    At relevant times of the occurrences of this complaint under CEO CG, SW was
the vice president of marketing for NNA.. He was later promoted and transferred to
NNA's headquarters in Tokyo, Japan, where he served as senior vice president of
worldwide marketing for Nissan Motor Company.

211.     In this position he was responsible for selling Nissan products, building the
Nissan brands, and forecasting marketing concepts such as transforming NNA's ad
campaigns.  Transforming the slogan and term "Cars for the Human Race" into the term
"Shift" and later developing the marketing campaign "the Black Experience". SW within
this capacity at Nissan is over employee's agents and servants at the corporate
headquarters, alongside True Agency and TBWA\CHIAT\DAY and as much to Nissan –
Infiniti individual dealerships whom by this complaint acted (collectively "white persons"
and "black persons".)

212.    As part of its marketing division Nissan - as well as - NILT provides training to
dealers, including training regarding "selling techniques". One of the job duties of
Nissan sales representatives is to "assesses training" needs in assigned dealerships
and provides appropriate training in product knowledge and basic selling techniques to

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 59 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

dealer personnel.

213.    At the time of the commencement of defendants comportments Sharon White was the Consumer Affairs Regional Specialist Nissan, Northeast Region, NNA File # 5228594 Consumer Affairs 18501 S. Figueroa St. Gardenia, CA 90248 1-800-647-7261 Phone Mailing Address P.O. Box 191 Gardenia, CA 900248-0191 For Nissan: Call 1-800-647-7261 For Infiniti: Call 1-800-662-6200, option 7 Sharon White within this capacity at Nissan and Infiniti is over employee's agents and servants and as much to Nissan and Infiniti vehicle dealerships (collectively Nissan Consumer Affairs is operated by "white persons" and "black persons".)

## NNA'S, NILT AND DEALERSHIPS UTILIZATION OF MARKETING BY WAY OF CERTAIN ADVERTISEMENT SLOGANS, PHRASES, TERMS

214.    Nissan markets it's automobile products to the public under the name Nissan throughout the U.S. and Nissan vehicle dealerships and in public familiarity by, way into, the terms and ads "DNA", "Heritage", "Shift" (Shift_Desire, Dreams, and Passion,) "Black Experience", "Diversity", "Change is Good", E [acute accent], "Hotness" Marketing, "Shift_Obstacles", "Shift_Expectations", "Shift_The Future" "Shift_Forget About the Past" and "Shift_"Innovation" and "Innovation" on within radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

215.    Nissan and Infiniti markets its automobile services to the public under the name Infiniti throughout the US and Infiniti vehicle dealerships and in by way of Infiniti ads on radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 60 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

216.    NILT as a subsidiary to Nissan markets its automobile retail financing services to the public under the name NILT predominantly throughout Nissan –Infiniti vehicle dealerships.

217.    Dealerships complained upon markets its new and used vehicles to the public under the name of their individual dealerships (collectively marketing by NAC-N, KN, LI, IOM) on the radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline.

## ABOUT DEFENDANTS DISCRIMINATORY AND DEFAMATION COMPORTMENTS

218.    Of the many defamatory and discriminatory marketing comportments by Nissan, NILT and defendant automobile dealerships against plaintiff hereto are expatiations:

219.    In or about June 2005 at KN amongst it's employees, plaintiff was discriminated upon and conspired against by the way of unjustifiably removing and barring Mr. Thompson's affiliation with white sales persons. Furthermore defendant's comportments of discriminatory conducts and conspiracies transpired, while, in the midst of a contractual automobile deal for a Nissan automobile.

220.    That the defendants for no apparent reason but for discriminatory conducts removed the Nissan white sales persons affiliation and procedure with plaintiff for a racial provocation with a black sales person in violation of plaintiff's Civil Rights.

221.    Resultantly plaintiff had due cause to entreat racial injustice and stress,  as plaintiff an Hispanic ethnic background was subjugated to deal with only a black sales persons, whilst in eye view white persons customers could only speak to other white sales persons unjustifiably.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 61 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

222.    And during defendants discriminatory conducts and conspiracies, plaintiff lost all
rights, verbal agreements and privileges after the vehicle transaction was thoroughly
discussed with the white salesperson for exchange with the black sales person.

223.    Moreover plaintiff would be discriminatorily conspired against by the defendants
and disallowed to speak to the white sales persons for any vehicle offers in further. And
thereafter, systematically, defendants led plaintiff to proffer new negotiations
discriminatorily with this stress inducing black salesman that solicited higher pricing
standards than the prior white salesperson.

224.    During the same day plaintiff would be methodically ignored and un-
accommodated by the white salespersons after requests. The white salesman would
speak to the dealership manager, claim to go to lunch or work with another client by
phone in the eye view perspective of the plaintiff. That defendant white salesman would
at some stage participate in auto sales directly with clientele white persons.)

225.    As a direct and proximate result plaintiff would be discriminated upon by the
defendants dealership marketing processes as well as the overall transpiring outside
marketing by defendants within radio, television, sports, movies, songs, movies, music
videos, games, magazines, internet, billboards, newspapers, digital online and offline.

226.    At some point of defendant discriminatory marketing routine plaintiff would be
escorted to the rear of the dealerships to what appeared to be an alone and observable
segregated area of the dealership.

227.    In the event of defendants discriminatory marketing practices and conducts
defendant salesmen would instigate that there vehicles were attractive to women.
Additionally inquiry plaintiff if whether he had the assumption of dating by Craig's List

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 62 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

and meeting women after vehicle delivery? At one point displaying the process of how to date upon Craig's List by computer.

228.    Defendants also led plaintiff to believe that he would not lose his prior contractual propositioning with the white sales persons, yet he was conspired upon to do so, plaintiff would lose his automobile deal based on this discriminatory basis, plaintiff would soon thereafter leave the dealership without a necessary vehicle.

229.    Plaintiff would respond to other dealerships LI, NAC-N Motors, outside the perception of KN's dealership view, the aforesaid conspiratorial events would transpire within in the two different dealerships as described aforsaid.

230.    Furthermore plaintiff would also be escorted to the rear of the dealership to what was an obvious observable segregated area of the dealership.

231.    In one response, Mr. Thompson requested that defendants accommodate his non-discriminatory beliefs and practices. defendants refused to remove their discrimination policy as a direct and proximate result.

232.    After one such request and visit to NAC-N plaintiff was discriminatorily questioned by the marketing manager of NAC-N as to his religious faith - and then after this religious inquiry plaintiff was led to a black salesman that solicited pricing standards, thousands of dollars higher than the white sales persons. Upon information and belief in such a query by the defendants plaintiff was subjected to a customary comportment of defendant's discriminatory marketing policies.

233.    Each time plaintiff would visit the 4 dealerships aforementioned defendants would discriminate, conspire and to enforce plaintiff as a Hispanic person, to discuss

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 63 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

his auto purchase with a black salesman instead of a white sales person.

234.     At a certain dealership(s) plaintiff would also be ushered pass available black
sales persons to a black sales persons with a likeness of facial appearance of MJJ to
whom would perform an pervasive and discriminatory sales protocol of automobile high
pricing, financial adversity and cost preventions.

235.     As an direct result plaintiff would be discriminated upon by the defendants for
their marketing processes of compulsory sterilization and eugenic developments.

236.     Defendants would also perpetrate a discriminatory racial posture that thereby
enforced fraudulent higher vehicle prices for plaintiff by a black sales person (as
compared to a lesser price with white sales person(s) and exclusive auto pricing for
white customers.)

237.     And in lieu of this disparate treatment plaintiff was unable to acquire an
automobile. By these assessments plaintiff has been detrimentally subjected to
discriminatory conducts, and higher prices than average as compared to Caucasian–
auto consumers.

238.     Plaintiff would complain to defendant Nissan about the conducts within this
complaint and in response receive a letter from Sharon White who is the Consumer
Affairs Regional Specialist Nissan, Northeast Region NNA File # 5228594.

239.     Plaintiff also complained to defendant LI about the conducts within this complaint
and in response defendants retaliated as plaintiff received a threatening letter
addressed to his parent-mother.  That there was no preceding information about
plaintiff's parent-mother given at the defendants dealership.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 64 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

240.     As a direct and proximate result plaintiff at the same time has rented several automobiles at a loss of income, time and expense spent vehicle shopping.

## DEFENDANTS CONDUCTED MULTIFARIOUS FRAUDULENT FINANCING POLICIES AND DISCRIMINATORY COMPORTMENTS AGAINST PLAINTIFF

The following terms, as used herein, have the following meanings:

Non-recourse - "Non-recourse" means that the assignee of a loan agreement cannot require payment by the assignor in the event of the default of the obligor. In a "non-recourse" automobile finance transaction, the finance company NMAC bears all the risk of default and the dealer never bears any of the risk of default. After the NILT finance forms are completed by the customer, the dealer "assigns" the NILT agreements to NILT and NILT then pays the dealer the amount financed as listed on the installment agreement. If the consumer later defaults, the dealer keeps the money it received from NILT, owes NILT nothing and has no responsibility regarding the default. The automobile transactions that are included in the plaintiff's definitions are all "nonrecourse" transactions.

Tier -"Tiers" are categories of risk that are assigned after evaluating many factors relative to the person and the proposed purchase. NILT began using a Tier based financing system in approximately 1990. Letter designations are used. "A" tier is the most credit worthy applicant who receives the lowest available rate. "B", "C" and "D" tier customers are progressively less credit worthy and are eligible for progressively higher rates. At different times, NILT "Tiers" have -been referred to by names, numbers and letters. Regardless of the labels given the tiers, the concept is the same, NILT categorizes its

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 65 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

customers by risk and establishes an appropriate risk-related finance charge rate after considering numerous individual and deal attributes. All NILT customers are assigned a risk tier.

Buy Rate - "Buy Rate" is the minimum interest rate required by NILT for a particular transaction. The "Buy Rate" for a particular transaction is based on the credit risk "Tier" the customer is assigned by NILT. Thus, the "Buy Rate" is the minimum finance charge for a particular customer after consideration of all risk related variables pertaining to the customer's purchase. The "Buy Rate" is always set by NILT and is never set by the dealer.

Rate Sheets - "Rate Sheets" refer to the notices that NILT periodically sends its dealers informing the dealers of the "Buy Rate" for the different "Tier" levels. In addition to informing the dealer of the "Buy Rate" for the different "Tier" levels, the rate sheets inform the dealer how much they are allowed to markup the "Buy Rate" for each particular "Tier".

Contract APR - Contract APR" is the total finance charge stated as a percentage as shown on the-customer's retail installment contract. (Annual-Percentage Rate)

Finance Charge Markup - "Finance Charge Markup" is 'the non-risk finance charge added to the Buy Rate. "Finance Charge Markup" is paid by the customer to NILT, as a component of the total finance charge (Contract APR), without the customer ever knowing that a portion of their Contract APR was "Finance Charge Markup". The term "points" is sometimes used to describe 'finance Charge Markup".

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 66 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Maximum Markup - "Maximum Markup" is the maximum number of percentage points that NILT authorizes a dealer to markup a particular transaction above the risk based "Buy Rate". NILT sets the dealer markup limit at various amounts depending on the tier and the particular program that the individual is financing under, such as the college graduate program (1% markup limit). In some cases, NILT does not allow the dealer to markup the "Buy Rate" at all and in some cases it allows the dealer to markup the "Buy Rate" as much as 5 points.

Dealer Participation - "Dealer Participation" is that portion of the "Finance Charge Markup" payable to the dealer by NILT. NILT refers to "Dealer Participation" as "Dealer Commission". During the relevant time period, the dealer has received either 75% or 77% of the "Finance Charge Markup" and NILT has kept the remainder. None of the NILT designed forms that the customers are required to sign and inform the customers of the "Finance Charge Markup" system, or about "Dealer Participation".

NILT Participation - "NILT Participation" is that portion of the Finance Charge Markup not included in "Dealer Participation". During the relevant time period, NILT has kept either23% or 25% of the "Finance Charge Markup" and the remainder has been paid to the dealer.

241.   On or about June of 2006, After duly notifying Nissan–Infiniti corporate headquarters, dealerships, law departments and marketing departments that plaintiff had sustained discriminatory conducts in the past.

242.   Resultantly plaintiff' went objectively into defendant IOM dealership expecting to lease a vehicle (Infiniti FX35) within good faith and fair dealing. However Plaintiff was only to be a part of other fraudulent contraventions such as with their financing,

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 67 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

discriminatory marketing processes) illustrated as follows;

243.    Prior to visiting IOM dealership plaintiff had seen an advertisement on defendants website informing plaintiff of a special one-year auto lease incentive without banking fees. plaintiff after noticing the ad would e-mail defendant IOM and in return would receive a telephone call from salesman at IOM. plaintiff would visit the dealership on or about June 14, 2006 to discuss the details of the contractual leasing agreement.

244.    During the visit plaintiff would observe an inter office document from NILT and IOM stating that banking fees were not applied under plaintiff's contractual arrangement or lump sum financing. Resultantly defendants required plaintiff to deposit $100 onto vehicle FX 35 No. VIN: JNRA808WX6X205641.

245.    2 weeks later plaintiff was yet a part of another model of discrimination conducts to which (by IOM Finance Manager and Infiniti Financial Services utilized pretenses of an already established discrimination scheme, fraud and misrepresentation for unfounded finance charge markup and banking fees that plaintiff had not been informed of beforehand.

246.    Plaintiff was asserted a Finance Charge Markup and secondarily an acquisition fee, more often called a "Bank Fee " that is often a negotiable administration fee charged by the leasing company (Infiniti Financial Services.)

247.    Although the lease company can set this fee, it is common for dealers to "bump" this fee to consumers or add a little extra profit for themselves. plaintiff could not attempt to negotiate the Bank Fee down in lieu of his Finance Charge Markup although it was documented, advertised and promised not to be applicable earlier.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 68 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

248.   NILT exercised complete discriminatory methodology of setting interest rates against plaintiff;

249.   The dealers set rates in conformity to NILT's policies. For every customer, NILT set the permissible range of finance charges, and created an incentive for the dealer to charge as much as possible. NILT appropriates- every loan application and its terms individually, and, NILT shares in the profits from the dealers' discriminatory conduct.

250.   In fact, NILT allegedly is a far more active participant in Manhattan of Infiniti discriminatory conducts. NILT designed and implemented the very system that quite predictably resulted in the alleged discriminatory conduct by dealers.

251.   An NMAC senior executive, testifying on behalf of NMAC, admitted that judgmental pricing was antiquated and could lead to bias.

252.   Despite this awareness, NILT has implemented a pricing policy that expressly authorizes dealers to impose at their discretion finance charges not based on risk.

253.   With this awareness of the risks of judgmental pricing, NILT designed a policy that gave Manhattan of Infiniti unregulated discretion to set a non-risk based finance charge up to the rate ceiling for plaintiff.

254.   Thusly, NILT necessarily knew - and indeed intended - that plaintiff presented a specific risk profile which would create discriminatory interest rates for plaintiff's auto loan. It defies logic for NILT, admittedly aware that discretion may lead to racial bias, to purposefully design and implement such a policy and then claim that it could not have known of the alleged discrimination that predictably resulted.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 69 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

255.     Upon datum NILT was on notice and standby of the dealers discriminatory
conducts against the plaintiff.

256.     Plaintiff before going to the dealership, during a telephone discussion with
defendants salesman on June 29, 2006 the day of leasing-purchase and or delivery,
plaintiff would place auto insurance certificates onto vehicle auto No. VIN:
JNRA808WX6X205641, defendant's IOM and Infiniti Financial Services would
thereafter discriminatorily change the banking fee and finance charge markup
responses.

257.     Prior to the day of plaintiff's insurance purchase there were no statements
mentioning of any obligatory banking fees, finance charge markups and or removal of
special incentives.

258.     On the day of signing the lease agreement - defendants would discriminatorily
install plaintiff into higher credit rating system possessing a mandatory banking fee of
$550 and remove the opportunity for plaintiff to pay for the car in a lump sum financing
at a reduced cost. plaintiff was notified by defendants finance manager that his credit
rating had declined from a Tier -1 at 2.99 % or Tier - 2 at 3.99 % and was insufficient for
lease inception. Resultantly defendants would thereby install a Finance Charge Markup
of over 19.9 % (after the previously discussed financing and leasing arrangement.)

259.     Defendants finance manager would also discuss credit ratings and banking fees
of other selective credit approved customers of Infiniti Financial Services (at much
lower prices;) defendants have implemented mandatory terms and conditions for
service of Hispanic persons, such as the requirement of Finance Charge Markup and
thereby assertiveness of compulsory Bank Fees that are less favorable than the terms
and conditions for service to others.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 70 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.                     Date: September of 2020                Page 71 of 139
File at: SDNY

260.    In the event of plaintiff's emotional stress development, personal medical injuries,
pressing family matters plaintiff would lease auto No. VIN: JNRA808WX6X205641.
Within the occurrences of the transaction to lease the vehicle defendants would
perpetrate discriminatory conducts, and fraudulent fiscal objectivity towards the plaintiff.
Resultantly plaintiff's would suffer emotional stress and duress caused by the
defendants willful and wanton assumptions.

## IFS AND IOM RETALIATED AGAINST PLAINTIFF'S AUTOMOBILE LEASE AGREEMENT BY WAY OF LATE PAYMENT NOTIFICATIONS, IMPROPER REPAIRS, AND REPLACED AUTO PARTS WITHOUT NOTICES

261.    Plaintiff, after ascertaining the lease agreement from IOM plaintiff would be
retaliated against and or harassed by Infiniti Financial Services, during the first payment
statement. This retaliation would transpire as defendants would mail plaintiff's payment
notification to his residence late 2 months (for no reason but defendants retort of the
leasing agreement.

262.    In furtherance during repair and services of the vehicle plaintiff was nitpickingly
retaliated against as a form of discriminatory conducts and harassment by IOM by their
repair and services processes outside of request. Such as by without notification to
plaintiff removing of sporty FX-35 cross over roof rails, for standard roof rails, replacing
the affronted floor mat carpeting and adding inoperable all-wheel drive interior switches,
(possibly replacing the plaintiff's car in total.)

263.    Upon information and belief plaintiff attempted to turn in his leased vehicle into
defendant IOM dealership on or about September 2007, defendants would once again
retaliate against plaintiff during dealership request for a new lease agreement. On
behalf of the discriminatory comportments plaintiff's wrote letters to the dealerships,

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 71 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Infiniti - Nissan and there have been no responses.

264.    As a direct and proximate result defendants would discriminate once again and institute its policy of discrimination enforcing plaintiff to speak only with a black person in this case the late auto salesman Daniel Brandt as relevantly described in pages 17 through 19 and 40.

### STUDIES ON NISSAN

265.    Because of the defendant actions plaintiff has sustained and suffered the discriminatory conducts for several years of defendants marketing. plaintiff has acted on good faith and has ended up leasing his automobile at a higher cost without concern of reimbursements by the defendants knowledgeably, although NNA has preceding precedence of a case within this same subject matter such as by Robert F. and Betty T. Cason, Et Al. v. Nissan Motor Acceptance Corporation (NMAC), Case No. 3-98-0223, U.S. District Court for the Eastern District of Tennessee.

266.    Within a 7 -year joint study conducted by professors Mark Cohen of Vanderbilt University, and Ian Ayers of Yale University, was released, which included 300,000 Nissan car customers, located in 33 states across the U.S.

267.    According to the study, African Americans paid on average more than double the discretionary finance charges (DFC) than Caucasian buyers with comparable credit ratings. The findings concluded that the practices were pervasive across the U.S. Dealer markup drives profits within the automotive industry.

268.    Nissan dealers have used their discretionary leverage to adjust finance rates higher for African Americans 71% of African American borrowers are charged a

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 72 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

markup, compared to 46% of Caucasian borrowers. In 33 states African American car customers consistently paid more than Caucasian customers with similar credit ratings.

## PAST REVIEW OF NISSAN CAR LOANS FINDS THAT ETHNIC BACKGROUNDS HISPANICS-BLACKS PAY MORE FOR VEHICLES

269.    Statistical study of more than 300,000 car loans arranged through Nissan dealers from March 1993 to September 92 - believed by experts to be the largest pool of car loan data ever analyzed for racial patterns - shows that black customers in 33 states consistently paid more than white customers, regardless of their credit histories.

270.    The gap between black and white borrowers was largest in Maryland and Wisconsin, where the average finance charge paid by blacks was about $800 higher than whites paid.

271.    Among the largest states, the study also showed that on average blacks paid $245 more in Connecticut, $339 more in New Jersey and $405 more in New York. In Texas, the black-white gap was put at $364; in Florida, it was $133.

272.    In the national Nissan data, 72.8% percent of blacks were charged a markup, compared to 46.7% percent of white customers. And among all customers who were charged a markup, blacks consistently paid more than whites, according to Professor Cohen. Black borrowers who paid a dealer markup were charged, on average, $1,351, compared to $989 for the whites whose loans were marked up. Moreover, the Cohen study showed that dealers were far less likely to give blacks, even those with top-quality credit, the advantage of the lender's preferential interest rates.

273.    Of the customers in NMAC's first credit tier, for example, 32.4 % percent of

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 73 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

whites were offered special interest rates, while only 15.3 % percent of blacks were. Professor Cohen tested for a number of variables that the lenders' statistical experts had offered as possible explanations for the observed racial disparities in Tennessee. None, he said, were sufficient to explain away all the differences in markup charges.

274.    Professor Cohen cites, as an example, the case of two Louisiana women who purchased Nissan Sentra's last year. Both women were in NMAC's first credit tier and were thus qualified to borrow at 8.25 % percent.

275.    The first, who was white, borrowed $15,093 over five years at the preferential rate of 3.9 % percent, with monthly payments of $277.73. The second, who is black, borrowed only $14,787 over five years, but she was charged a dealer markup of one percentage point, for a total interest rate of 9.25 % percent. Her monthly payment was $309.94. Nissan also permits dealers to move approved customers from a higher credit classification to a lower one, which has the effect of raising the customer's interest rate.

276.    Professor Cohen found that 4 % percent of the black customers had been moved into a lower credit tier, while only 2.3 % percent of white customers were. NMAC established a limit on how much dealer markup can be imposed for each credit tier and policies like that may be inadvertently contributing to the racial disparity that shows up in the loan data, according to Ian Ayres, a lawyer and economist who is a professor at Yale Law School.

277.    Professor Ayres, who has conducted several widely cited studies on car retailing over the past decade, He noted that NMAC limited the amount of markup allowed on loans in the highest credit tier. Because whites are more likely than blacks to be placed in that tier, that limitation has the side effect of reducing the markup paid by whites.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 74 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

278.     Similarly, NMAC allows greater markup on loans of longer duration. Because blacks tend to borrow for a slightly longer term than whites, this too can contribute to the higher markups they pay.

279.     Finally, NMAC often imposed lower markup caps on loans for new cars, which whites are more likely to buy than blacks. But Professor Ayres noted that there was no business justification for allowing dealers, who have no money at risk in the transaction, to impose a higher markup based on factors such as the credit tier, the loan term or the age of the car. "None of these selective markup caps are justified by the dealerships' costs of arranging and or processing loan applications", Professor Ayres noted in his study.

### **NILT'S ECOA AWARENESS AND FAILURE TO COMPLY**

280.     The automobile financial industry, including NMAC, has been put on notice for years that commission driven discretionary pricing systems in the real estate mortgage industry, like the system utilized by NMAC, produces significant discriminatory effects.

281.     Unlike the real estate mortgage industry, which is required by federal law to collect information, The automobile financing industry exploits its exemption from gathering race information for ECOA compliance monitoring purposes in order to feign ignorance of the discriminatory impact of its discretionary pricing systems.

282.     NMAC, for years, has either sampled its available data, confirmed the discriminatory effects of its commission driven discretionary pricing system and chosen to ignore and conceal the discriminatory impact, or has intentionally avoided confirming the discriminatory impact.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 75 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

283.     Notice of the discriminatory effect of its commission driven discretionary pricing
system, which NMAC has known for years, was distributed throughout the financing
and banking industry as a result of legal proceedings by the U.S. Department of Justice
involving similar commission driven discretionary pricing systems in the real estate
mortgage industry,

284.     Notice of the discriminatory effect of its commission driven subjective pricing was
also distributed throughout the automobile financing and banking industries as a result
of a plethora of articles in trade journals following the U.S. Department of Justice legal
proceedings, including: Two Banks To Pay Damages Following Justice Probes into
Lending Discrimination,

285.     NMAC does not train its staff regarding ECOA compliance related to credit
pricing, does not have anyone assigned to ensure ECOA compliance related to credit
pricing, does not engage in ECOA self audits, does not audit its dealer arrangers /
originators, does not provide any ECOA training to its dealer arrangers/originators and:
does not provide any information to its dealer arrangers/originators regarding ECOA
credit pricing requirements.

286.     Despite clear and unequivocal notice of the unfair and discriminatory impact of a
commission driven subjective pricing -system, NMAC has continued its "Finance
Charge Markup" system and has done nothing to monitor or prevent the discriminatory
impact of the system.

## NNA'S MARKETING INTEGRATES THE SPREADING OF DISEASES INTO SOCIETY BY WAY OF IT'S INSTRUCTIVE, EUGENIC PRINCIPLES AND MEDICAL TERMINOLOGIES WITHIN ITS MARKETPLACES

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 76 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

287.    Plaintiff has experienced multifarious discriminatory conducts by NNA's
Marketing Director Steve Wilhite in regards of defendant's nationally distributed
advertisements by radio, television, sports, movies, songs, movies, music videos,
games, magazines, internet, billboards, newspapers, digital online and offline and in
likewise causes at the dealerships as described with particularity in paragraphs as
aforesaid.

288.    Moreover plaintiff's complaints that they were harmed by NNA's system of
utilizing their ad slogans and phrases to educate, resultant of detrimental
comportments.

289.    As a direct and proximate result Nissan utilized it's marketing for teaching and
educational results for the practicing of discrimination comportments that associate with
eugenics, the spreading of diseases and compulsory sterilization.

290.    One example: Relevance to defendants education values are made during a
website interview with Fresh Alloy.com A copy of the interview with NNA Marketing
Director SW and FreshAlloy.com is Attached and below hereto as Exhibit B.

291.    During this interview with FreshAlloy.com defendant Marketing Director SW
utilizes educative illustrations that later relate to foregoing discriminatory marketing
languages by utilization of the ad slogans "Shift" (Shift_Desire, Dreams, and Passion)
"DNA", "Heritage", "Black Experience", "Diversity",  "Change is Good", "E [acute
accent]", "Shift_Obstacles", "Shift_Expectations", "Shift_The Future" and "Innovation"
described in the proceeding paragraphs.

        **SW:**

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 77 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

However, it doesn't really relate to any of the other Nissan products or to the Nissan brand as a whole. The ad campaign doesn't really capture the "DNA" that's common throughout our product lines - **to the consumer**, it's not the Nissan Xterra - it's just Xterra. (SUV) The same can be said of the campaigns for the Maxima's "Cars like it: zero", Pathfinder's "Not that you would, but you could", and Altima's "Cure for the common car" - these are messages that do a great job of describing the cars to the consumer, but don't do a god job of "tying it all back to the Nissan DNA and heritage".

For this reason, when we made the decision to transition to Shift_, we wanted to simultaneously **educate and inform** people about both the model and the overall Nissan brand. For this reason, when we made the decision to transition to Shift_, we wanted to simultaneously "educate and inform" people about both the model and the overall Nissan brand.

292.    As a direct and proximate result NNA's utilization of marketing has been for the educative and informative purposes to proliferate the spreading of diseases. Furthermore the terms "Shift" (Shift_Desire, Dreams, and Passion) "DNA", "Heritage, "Black Experience", "Diversity",  "Change is Good", "E [acute accent]", Shift_Obstacles", "Shift_Expectations", "Shift_The Future" and "Innovation" are utilized for the integration into society eugenics, compulsory sterilization and dissemination of the spreading sickle cell anemia and aids.

## DEFENDANTS UTILIZATION OF DISCRIMINATORY CONDUCTS,  DEFAMATION OF CHARACTER FOR HUMAN EXPERIMENTATION PRACTICES

293.    In the process of defendants multifarious comportments for human experimental marketing procedures plaintiff has experienced many pervasive discriminatory conducts

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 78 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

and defamation of character marketing intrusions by NNA.  As an explanation;

294.     Plaintiff is opposing that during defendants marketing comportments there
transpired defendants having utilized comparison advertisement purposes for
discriminatory conducts and defamation of character by the distinguishing script and
sequences within the 2 separate television commercials.

295.     As an explanation of 2 television commercials at controversy which were made
by NNA they were released in the same year.

296.     The first advertisement is entitled "With Dad" for the Nissan Superbowl
commercial February 2015 it was produced inclusively with a Caucasian male actor.

297.     "With Dad" was followed up by Nissan Maxima's April 2015 television commercial
entitled "Day and Night" made with a male actor of plaintiff's resembling facial
appearance Hispanic.

298.     Upon datum the commercials remains actively circulated by Nissan "Day and
Night" is located at https://www.youtube.com/ watch?v =wr_84x9XJoE.  Nissan "With
Dad" https://www.youtube.com/watch?v=tps-uM3qZeE.

299.     Upon datum defendants latter commercial is noted for airing as recently as on
Black Entertainment Television (BET), and Bounce TV.

300.     Amongst the many discriminatory conducts and defamation of character by the
defendants within their television advertisements script and sequences

301.     There are controversial subject matters by way of the plaintiff's male appearance

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 79 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

being utilized inappropriately for defamation of character and xenophobia, depictions during the advertisement.

302.     That defendants immoral defamatory depiction of plaintiff's ethnicity arises as the Hispanic, male actor, who appears in facial likeness to the plaintiff and resultantly drives, a Nissan Maxima for the "Day and Night" television commercial.

303.     Because of this facial conception the plaintiff is offended by the defendants intentional discriminatory demeanors.

304.     As a result during the "Day and Night" advertisement it utilizes this Hispanic appearing actor discriminatorily as an Hispanic Cuban male who utilizes multifarious unlawful driving practices.

305.     In furtherance because of this Hispanic appearance plaintiff is  to violate numerous driving rules and regulations at a high rate of speed.

306.     Alternatively, during the "With Dad" television commercial it contains the concealment of a lawful abiding Caucasian male actor who is a professional race car driver at high speeds.

307.     In the concealment, that during "With Dad" he is always in abeyance to the traffic laws while on the race track and during his driving sequences.

308.     Resultantly expressing one actor who drives lawfully and the other unlawfully thereby both commercials were made to be in comparison and equates to discriminatory and defamatory comportments by NNA.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 80 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

309.    In furtherance during the "With Dad" television commercial it utilizes this
        Caucasian male actor, contrarily, to the "Day and Night" Hispanic actors therein
        equating the 2 advertisements for defamation of character by fiscal relativity.


310.    Such that NNA released "With Dad" for its 2015 Super Bowl advertisement,
        giving us a motorsports ad that featured the eagerly awaited, front-engined GT-R-based
        Le Mans car.


311.    Also marketing at the same time period, NNA released an television commercial
        with intents of defamation of character, by comparison of the next-generation Nissan
        Maxima utilized within the "Day and Night".


312.    Resultantly NNA et al. utilized this advertisement basis for discriminatory basis
        and defamation of character because the Caucasian actor who drives a more
        expensive GT-R-based Le Mans $100,000 race car as compared to the Hispanic
        appearing actor who drives a less costly $35,000 Maxima automobile.


313.    Attached  on the next page are side by side references, photographs of the 2
        automobiles utilized by NNA's  marketing, for disparity by appearances, the GT-R-
        based Le Mans costing $100,000  versus the less costly $35,000 Maxima.


This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 81 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.                     Date: September of 2020              Page 82 of 139
File at: SDNY



Reference. photo of GT-R-based Le Mans for NNA's TV commercial "With Dad".



Reference  photo of red car utilized for NNA's TV commercial "Work Hard".

This lawsuit is based upon Attempted Murder,          **Mario A. Thompson**
Compulsory Sterilization, Eugenics, Genocide,               Plaintiff Pro Se
Human Experimentation, Civil Rights, Human                  P.O. Box 1004
Rights, Defamation of Character, Fraud and                New York, N.Y. 10163
Misrepresentation. The contents of this complaint        Phone: 646-377-6677
is copyrighted © 2020 by Mario A. Thompson.             Email: mat92878@gmail
Page no. 82 of 139

314.    As a result the Hispanic actor is associated with a lesser evaluation of an automobile, diminished fiscal capability to sustain a marital process as compared to the Caucasian actor.

315.    Moreover by this financial relativeness that the Caucasian actor appears financially suitable for a marriage and family as compared to the diminished monetary attributes of the Hispanic actor.

316.    Another xenophobia and defamatory premise transpires by NNA as by comparison of the 2 television commercials "With Dad" and "Work Hard" within their scripted content for the characters, theme, plot, locations and feel.

317.    The depictions of "With Dad" transpires as he undertakes balancing a professional racing career and raising a family over a period of years. Attached underneath is a photocopy of an photograph from the "With Dad" commercial.



Photo of actor utilized for NNA's TV commercial "With Dad".

318.    "With Dad" expresses the actor away from home and he has thoughts often of a son maturing at home with mom, whilst he is away at the competitions. The commercial

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 83 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

brink of sunset, an actor of plaintiff's facial likeness of appearance pictured below, walks out of the office building, bordered by staring females pedestrians.

324.    He observes his red Nissan Maxima as pictured above, on a busy city street as the staring female pedestrian captures his attention.

325.    After the females pass by before he enters the car, by gaping observation of the car it transforms paint color from a bright  red to a darkened paranormal black color. Attached below is an reference photograph of the automobiles at comparison.



Photo of black car utilized for NNA's TV commercial "Work Hard".

326.    As he actually sits in the car he viscerally revs the engine to the Maxima, to a high rate of the tachometer about 170 horsepower on a city street which means about 120 mph or more if your foot is off the brake pedal.

327.    As the commercial transpires the driver moves the automobile it appears to be going faster beyond  the legal speed limit. Speedily enough so that the car's paint emanates to a nefarious black, as he drives faster and faster whilst the driver numerously violates traffic rules and regulations.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 85 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

328.    During the driving occurrences he is casing women pedestrian driving faster and
faster, as though looking for prostitutes.

329.    Moreover as a male Hispanic the actor is directed to utilize illegal driving
methods, rules and regulations and traffic violations: As an example inside of a tunnel
with no traffic, the driver appears to be taken the car over the speed limit, He utilizes no
signals as the car crosses over double yellow lines for no apparent reason.

330.    During the commercial he appears to be speeding up to a green traffic light, with
no turn signal he crosses lanes from the right lane and into the left making a wide right
turn for no apparent reason but for speeding or driving irrationally.

331.    As he watches day turn into night amongst the skyscrapers, the Nissan driver
becomes influenced and possessed looking for female companionship. He then
voyages through the cityscape in what is now a notorious transformed black Nissan
Maxima

332.    The "Day and Night" commercial ends as though after achieving a female
companionship he reaches his final destination during the time of for family breakfast
about 7am. Seeing his wife and sibling through the window of his home, the audience is
reminded that we are at the brink of dawn. That a journey from the office that started at
about 8pm transpired until 7am the next day.

333.    As a direct and proximate result of the defendants "Work Hard" television
commercial it depicts defendants discriminatory conducts and defamation of character
because of the content throughout the advertisement. Hispanic males are depicted as
unlawful behind the wheel of a car and womanizers.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 86 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

334.     In furtherance that defendants advertisements articulates a marketing ploy that
display an comparison by "With Dad" defining NNA's utilization of plaintiff's appearance
for discriminatory conducts and defamation of character.

335.     That "Day and Night" appears to be driving in a illegal manner on a city street
whilst "With Dad" isn't. Also That "With Dad has more family stability appeal whilst "Day
and Night" is contrary to family concern and safe driving and car handling.

336.     Defendants discriminatory conducts and defamation during the television
commercials, reflects on the plaintiff and their heritage and injures the reputation of the
plaintiff. As an example: because of the substance of NNA's advertisements plaintiff
was insulted on behalf of persons that saw the defendants advertisements, for their
appearance in the advertisements falsely believing this is proper behavior for lawful
driving and family stability.

## DEFENDANTS HAVE UTILIZED EUGENICS MARKETING PROCESSES, DISCRIMINATION AND DEFAMATION OF CHARACTER AGAINST PLAINTIFF ON BEHALF OF THE RESEMBLANCE TO MJJ.

337.     Plaintiff has experienced multifarious discriminatory conducts and defamation of
character responses by NNA's marketing for the purpose of eugenics and compulsory
sterilization.

338.     This includes during a 2007 Vibe magazine photograph expose entitled "the
Black Experience and an Nissan 2008 television commercial entitled "A Change is
Good" with actors who resemble MJJ. As an illustration of defendants comportments;

339.     During many of the defendants multifarious comportments there has transpired

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 87 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.               Date: September of 2020          Page 88 of 139
File at: SDNY

defendants having utilized plaintiff's Hispanic male facial appearance and heritage
comparatively verses black persons with MJJ's appearances.  Resultantly utilizing the
facial differences as a form of discrimination marketing and defamation of character.

340.    2 productions of this form of contending marketing are  page 11 of the Mary J.
Blige cover to March 07 issue of Vibe magazine. Attached hereto as Exhibit C. And a
photograph entitled "A Black Experience is Everywhere" Exhibit D. photograph from
NNA's TV commercial entitled "A Change is Good".

341.    Exhibit C.



Photo of NNA's "Vibe magazine advertisement
entitled "A Black Experience is Everywhere".

342.    Plaintiff's is contending that defendants distributed the marketing simultaneously

This lawsuit is based upon Attempted Murder,          **Mario A. Thompson**
Compulsory Sterilization, Eugenics, Genocide,              Plaintiff Pro Se
Human Experimentation, Civil Rights, Human                  P.O. Box 1004
Rights, Defamation of Character, Fraud and               New York, N.Y. 10163
Misrepresentation. The contents of this complaint        Phone: 646-377-6677
is copyrighted © 2020 by Mario A. Thompson.              Email: mat92878@gmail
Page no. 88 of 139

to be competitive and defamatory to his heritage.

343.    Plaintiff is challenging the defendants because during the same time frame of
NNA's magazine advertisement "A Black Experience is Everywhere" is a defamatory
appearance in comparison to the television commercial entitled "A Change is Good"
which contains black males actors with the facial appearance of MJJ's.

344.    Exhibit D.



Photograph from NNA's TV commercial entitled "A Change is Good".

345.    Upon datum the actors within the commercial have the facial appearance of
MJJ's for the intended purpose to spread diseases to plaintiff's heritages.

346.    In furtherance defendants distinguished the marketing "A Black Experience is
Everywhere" in the same time frame of their television commercial  "A Change is
Good", so that defendants could place  "A Black Experience is Everywhere" for
competitive defamation of character processes against plaintiff's heritage of women.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 89 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

347.    As a direct and proximate result defendants magazine advertisements and
commercials combined are intentionally discriminatory and pertain to defamation of
character of plaintiff in either result.

348.    In furtherance of defendants comportments defendants conspired to perpetrate
discriminatory conducts and defamation of character and thereby wide spread
marketing comportments against Hispanics and plaintiff's for "human experimentation"
practices and spreading of diseases.

349.    Resultantly defendants marketing promotions are both intentionally for
discriminatory conducts and defamation of character utilized against plaintiff's and their
heritage, by way of compulsory sterilization processes and dissemination of the disease
sickle cell anemia.

350.    As a direct and proximate result the advertisements are marketing ploys, to
display NNA's utilization of discriminatory conducts and defamation of character and
supportive of eugenics to transform the health and race of certain ethnicities.

351.    In furtherance that the defamatory and discriminatory pictures reflects on the
plaintiff and their heritage and injures the reputation of the plaintiff.

352.    That amongst other causes: it reflects on plaintiff because of the substance of
NNA's advertisements, by racial concept for the pretenses of race conversion purposes
and "human experimentation".

353.    Additionally by this marketing endeavor plaintiff was insulted on behalf of persons
that saw the defendants advertisements, for their utilization of eugenics in the
advertisements to disseminate the disease sickle cell anemia amongst females.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 90 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.                    Date: September of 2020          Page 91 of 139
File at: SDNY

## DEFENDANTS MARKETING PROCESSES CONTAINING THE LIKENESS OFF MJJ
## HAS BEEN UTILIZED TO DISCRIMINATE AND DEFAMATION OF CHARACTER

354.    As another circumstance of defendants ongoing marketing schemes is to utilize

eugenics comportments with the renowned appearance of MJJ and actors

355.    An example of this is with MJJ's relative likeness of appearance during the

television commercial entitled "Be my Guest".  Attached is a reference photographs of

the MJJ comparison.



Reference photo of NNA's TV commercial "Be my Guest".

356.    That defendants marketing comportments expresses defendants desire to utilize

MJJ's to perpetrate "human experimentation" marketing, as well as discriminatory

conducts and defamation of character marketing comportments against plaintiff's and

male Hispanics.

357.    As a direct and proximate result the advertisement "Be My Guest" is an

marketing ploys, to display NNA's utilization of discriminatory conducts and defamation

of character, and supportiveness of eugenics to transform the health and race of certain

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 91 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

ethnicities, Hispanic persons.

358.    In furtherance that the defamatory and discriminatory pictures reflects on the
plaintiff and their heritage and injures the reputation of the plaintiff. As an example
amongst others, because of the substance of NNA's advertisements plaintiff was
insulted on behalf of persons that saw the defendants advertisements, for their
eugenics processes in the advertisements.

## THAT NNA'S TELEVISION COMMERCIAL HAS CONTAINED SUBSTANTIAL SEXUAL COMPORTMENTS WITH THE APPEARANCES OF AN ACTING CHARACTER RESEMBLING MJJ

359.    Defendants have often produced their marketing expressing multifarious
discriminatory and defamatory comportments against plaintiff, which includes the
likeness of appearance of MJJ. As another example of defendants marketing;

360.    Defendants would produce and sponsor a nationwide 2008 Nissan-Murano
television commercial with an male acting character that has the obvious facial
appearance of MJJ, for eugenics and miscegenation purposes. Upon datum the
television commercial is entitled a "A Winding Road.  As an example of this commercial;

361.    At the outset of defendants TV commercial it transpires as defendants  would
utilize eugenics by ethnic differences of the male actor character  MJJ appearance  and
female actress (to whom appears to be a light skin color Hispanic heritage, ancestry,
light skin color appearance, outward likeness.). The female actress appears of plaintiff's
heritage, ancestry, skin color appearance, outwardly.

362.    In cause of their discriminatory and defamatory defendants marketing would

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 92 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

depict: The black actor is wearing a formal tuxedo, the actor is driving a Nissan Murano down a winding road and speaking on a cell phone, he is hurriedly driving down this dangerous winding road. To an outside performance hall location, with no orchestra. Vis a vis- the Stanley Kubrick's movie entitled "Eyes Wide Shut" made in 1999.

363.    During the  dialogue between the 2 and winding road themes exposition there are emulations of  an desirous sexual occurrences , as both are heaving on the other end of the phone conversation. Inside the location: During the film cutting and or shifting protocol of the sequences to the woman: (she is wearing an formal evening dress with revealing drop down cleavage.) The acting characters surrounding her are wearing a mask about their face.

364.    On location: She is lying down on a couch, whilst other are standing about her, holding a mask. The acting characters surrounding her are wearing a mask.

365.    Moreover, whilst laying on the couch the actress is speaking to the male driver over the telephone. She is playfully, touching and feeling her hips and outer thighs in anticipation of the actors forthcoming arrival. That the petting resembles sexual foreplay, masturbation and participation of an forthcoming orgasmic response.

366.    Throughout the advertisement the obvious commercial viewer could visualize by the camera panning and pointing out in slow motion the actresses protrusive curvaceous effeminate body parts, hips, heaving breast and leg movements.)

367.    In conclusiveness (at the end of advertisement) upon the actor's arrival the female actress stands up and the couple is joined together while there sexual anatomies hips and pelvis are in close proximity together (as if in a climactic orgasmic scene ending sequence.)

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 93 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

368.    As a direct and proximate result of defendants television commercial utilizing
unpronounced eugenic and probable miscegenation practices plaintiff's would be
placed inside another defamatory and discriminatory marketing occasion.


**NNA'S TV MARKETING CONTAINS DISCRIMINATORY AND DEFAMATION OF
CHARACTER PURPOSES AGAINST PLAINTIFF'S HISPANIC HERITAGES AND IS
INTENDED FOR HUMAN EXPERIMENTATION**


369.    As another example of defendant's comportments, plaintiff has experienced
pervasive discriminatory conducts and defamation of character, and by NNA this
includes an homophobic exemplification by way of as NNA's Murano "Love at First
Sight" 2006 television commercial. Located at https://www.youtube.com/watch?v=
HQDMAJ6ZHAc.


370.    A young man is at a telephone booth with Spanish music playing in the
background. The next shot is a man in a car playing dance music. He drives towards
the young man at the phone booth and stops at a traffic light. The man at the phone
booth turns around and meets the gaze of the driver.


371.    As the driver seductively looks at him, the dance music and the Spanish music
mix to make one song. Intoxicated by the gaze of the driver, the man at the phone
booth looks at him longingly. At that instant, the driver drives away. The man at the
phone booth desperately reaches out for the driver, but it is too late. The ad ends with,
"The all new Nissan Murano: love at first sight".


372.    As a direct and proximate result the advertisements are marketing ploys, to
display NNA's utilization of discriminatory conducts, defamation of character, and
supportive of "human experimentation" marketing to transform the health and race of

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 94 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

certain ethnicities, Hispanic persons.

373.    In furtherance that the discriminatory and defamatory pictures reflects on the plaintiff's and their heritage and injures the reputation of the plaintiff. As an example: because of the substance of NNA's advertisements plaintiff was insulted on behalf of persons that saw the defendants advertisements, for there appearance in the advertisements.

## DEFENDANTS UTILIAZED INTERNET MARKETING CONTAINING GRAPHIC DIAGRAMS AND CHARTINGS TO EXPRESS HUMAN EXPERIMENTATION AND LIBELOUS SLANDER PER SE OF SICKLE CELL ANEMIA CARRIERS

374.    Defendants have multifariously exemplified against plaintiff a broad range of "human experimentation" conducts and medical marketing languages to display NNA's willful and wanton desire to utilize eugenics.

375.    During one example Nissan has accomplished these goals by utilizing it's internet websites, advertisement(s, logos and graphics to reference eugenics, medical diagrams of sickle cell anemia carriers, and genetic recombination. In furtherance, Nissan has utilized their internet websites and its diagrams regarding the libelous slander of sickle cell anemia sufferers.

376.    Exhibit E.  A true and correct and copy of the Nissan-Global diagram and medical mapping illustrations that figuratively references to eugenics and sickle cell anemia carriers. Figure a. (is or was located at website http://www.nissan-global.com /EN /COMPANY/DIVERSITY/). This JPEG image is entitled by Nissan "idx_ill_style".

377.    Corresponding charting and medical mapping during the same year by Nissan is

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 95 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

or was located at figure b. website – images www.dukehealth.org/ .../ sicklecell
disease/chart), figure c. From the Sickle Cell Foundation of Orange County there
website is located at  http://www.scdfoc.org  and figure d. NNA's recombined graphic
design of circles and colors which is a fraudulent replication from www.dukehealth.org,
and www. scdfoc.org  for it's internet website at http://www.nissan-global.com /EN
/COMPANY/ DIVERSITY/) Attached as Exhibit E.

Fig. a.



Through diversity, Nissan is stronger and more competitive.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 96 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Fig. b.



AS = Sickle Cell Trait – no disease
AA = Normal Adult Hemoglobin
SS = Sickle Cell Anemia (Sickle Cell Disease)

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 97 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: With reference to the disease sickle cell anemia - Family pedigrees traces specific genetic characteristics through three or more generations. A medical family history helps identify healthy individuals at risk of developing a genetic disorder themselves, or of having a child with a genetic condition. In obtaining a family history, a health professional asks questions about the health of family members over a span of three or more generations.

The information is recorded as a graphic image that incorporates symbols, such as squares, circles, triangles, and diamonds, to present a shorthand record of the medical family history. This image, called a pedigree, can reveal the multigenerational pattern of a genetic disorder. For example, a dominant disorder affects at least one family member in each generation, whereas a recessive disorder may cluster in a single generation (excerpts from the NIH website located at http://www.nih.gov./)

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 98 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Fig. c.



This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 99 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: From the Sickle Cell Foundation of Orange County there website is located at http://www.scdfoc.org Definition of Causes - The Sickle Cell gene is passed from generation to generation in a pattern of inheritance called autosomal recessive inheritance. This is where the father and mother have passed on the defective gene to the child. This disease is normally passed down by parents who have sickle cell trait.

People with sickle cell trait have a normal hemoglobin gene and a defective gene. Their bodies will then make up both hemoglobin and their blood may contain some sickle cells. They will often never experience any symptoms of the disease unless they show low oxygen levels due to high altitudes, such as mountains or flying.

Two carriers of sickle cell trait have a 25 % percent chance of having an unaffected child with normal hemoglobin, a 50 % percent chance of having a child who is a carrier and a 25 % percent chance of having a child with sickle cell anemia.

Treatment for sickle cell disease is aimed at avoiding pain crisis, relieving pain and preventing complications. There is no cure for Sickle Cell Disease at this time, however with the proper treatment, many patients can lead healthier lives.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 100 of 139.

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Fig. d.



This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 101 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: - This essay explores the relationships between the terms of how HIV-prevention or risk avoidance is understood and enacted by populations at risk of HIV in the developed world, in particular, by gay men. From the abstract article "Sustaining Safe Practice: Twenty Years On Susan Kippax*, Kane Race National Centre in HIV Social Research, The University of New South Wales, Sydney NSW 2052, Australia Heterosexual men were and to some extent continue to be absent from the list, while women occupied positions as both vulnerable (wives) and dangerous (sexworkers)(Waldby, Kippax, & Crawford, 1993).Such 'risk group' categories position individuals in such a way that they are fully determined by the epidemiological narrative of risk: the epidemiological narrative easy to take for granted and left unchallenged by the mainstream because it is informed by wider cultural narratives about the location of disease and morbidity.

Thus sexual difference, as in the case of 'gay' is conflated with deviance and, in turn, with immorality and disease. Similarly, women who for a variety of reasons engage in sexwork are positioned as 'prostitutes', thus promiscuous and vessels of disease. This over-determination occurs because medical science uses the term 'group' in the same way as it uses the term 'population': as referring to a number of individuals identified merely by their membership of a particular population or group as 'gay', or 'bisexual' or drug user'.

Indeed within CDC categories adopted by most developed countries, heterosexual transmission is deemed to be a 'risk' only if the sex occurs with a 'partner' who is known to be HIV-positive, a member of a 'risk group',or from a high prevalence country. Medical science's use of the term 'risk group' failed (and continues to fail) to carry any sense of social connectedness and shared meanings; the term was and is simply a marker of an imposed identity category which came to stand for risk.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 102 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## DEFENDANTS HAVE UTILIZED THE ADVERTISEMENT SLOGAN "E [ACCENT ACUTE]" WITHIN THEIR MARKETING FOR DISCRIMINATORY AND DEFAMATORY COMPORTMENTS TOWARDS THE PLAINTIFF'S HERITAGE

378.    Defendants have committed multifarious comportments to instigate there offences against the plaintiff's Hispanic heritage. In one such example of defendants impracticalities against plaintiff heritage is within the advertisement utilization of the term "E [accent acute];

379.    Resultantly defendants have utilized the marketing, advertisement slogan E [accent acute] for discriminatory conducts and defamation of character purposes against plaintiff's by the marketing phrase E [accent acute] as acute accent was the apex, used in Latin inscriptions.

380.    Hereto are examples that explains NNA's harmful discriminatory conducts and defamation of character by way of the marketing term E [accent acute] below;

> Note - An early precursor of the acute accent was the apex, used in Latin inscriptions to mark long vowels. The acute accent first appeared with this name in the polytonic orthography of Ancient Greek, where it indicated a syllable with a high pitch. Modern Greek has a stress accent instead of a pitch accent, so the diacritic is now used to mark the stressed vowel of a word. Use in English As with other diacritical marks, a number of loanwords are sometimes spelled in English with an acute accent used in the original language: these include sauté, roué, café, touché, fiancé, and fiancée. Retention of the accent is common only in the French ending é or ée, as in these examples, where its absence would tend to suggest a different pronunciation. Thus the French word résumé is commonly seen in English as resumé, with only one accent.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 103 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: About Acute accents they are sometimes added to loanwords where a final e is not silent, e.g. latté.. This is non-standard. For foreign terms used in English that have not been assimilated into English or are not in general English usage, italics are generally used with the appropriate accents: for example, coup d'état, pièce de résistance, crème brûlée. Accents are sometimes also used for poetic purposes, to indicate an unusual pronunciation: for example, spelling the word picked (normally) as pickéd to indicate the pronunciation. The grave accent is also sometimes used for this purpose;

Note: Regarding to the Nissan ad slogan "E [accent acute]": hereto are examples of NNA's marketing utilizing cryptograms and cipher linguistics that highlight the letter "E": Plaintiff believes that the letter "E" correlates to the use of "acute accenting for the the following terms words amongst others: eugenics, Jesse Jackson, Robert F. and Betty T. Cason, Et Al. v. Nissan Motor Acceptance Corporation (NMAC), and other e incites;

Note: Regarding to the Nissan ad slogan "E [accent acute]": hereto is an example of NNA's marketing utilizing visceral and instinctive cryptograms regarding the visual aspect of the brackets relating to the slogan "E [accent acute]": Plaintiff believes that the three sided figure brackets represents a graphic design that transcends into a Nazi Germany swastika symbol;

Note: Regarding to the Nissan ad slogan "E [accent acute]": hereto is an example of NNA's marketing employing cryptogram and or cipher for the word "Accent": Plaintiff believes that it is a diacritical representation that sounds and rhymes with the last name of Civil Rights leader Reverend Jesse Jackson;

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 104 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: Regarding to the Nissan ad slogan "E [accent acute]": hereto is an example of NNA's cryptogram or cipher utilized for the word "Acute": Plaintiff believes that the word "Acute": characterizes the term "Sharp". From the word acute, the word sharp is obtainable by thesaurus. Resultantly Nissan utilized the expression acute to expound and describe the last name of Civil Rights leader Reverend Al Sharpton.

381.   At the same time of the usage of these E [accent acute]": advertisements, against the plaintiff's by Nissan, there are transpiring defendants all inclusive defamation of character and discriminatory marketing strategies in tandem as above said.

382.   As a result of defendants defamation of character practices by the slogan E [accent acute] defendants utilized the advertisement E [accent acute] to participant plaintiff during their discriminatory conducts and defamation of character practices from by the Latin precursor against the plaintiff;

383.   In furtherance plaintiff regards that the names Jesse Jackson and Al Sharpton were utilized for purposes of libelous slander, enjoined with the aforesaid discriminatory comportments and defamation of character and against the plaintiff.

384.   As a direct and proximate result of the marketing utilization of the term E [accent acute], plaintiff has experienced defendants pervasive offences by NNA. defendants during the usage of their ad slogan "E [accent acute]" purposefully slandering and defaming plaintiff whilst  violating's Civil Rights as above said collectively.

## DEFENDANTS MARKETING CONTAINED HEALTH RISKS, STATISTICAL ANALYSIS FOR OBTAINMENT OF DISEASES WITHIN PLAINTIFF'S HISPANIC HERITAGE BY WAY OF AFRICAN AMERICANS WITH SICKLE CELL ANEMIA

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 105 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

385.   Defendants marketing campaign(s,) Nissan-Infiniti, NILT and the automobile dealerships have forthrightly perpetrated there marketing against plaintiff by utilizing discriminatory conducts amongst those reasons;

386.   Defendants have utilized there marketing campaign to be consistent with defendants warranting of diseases and behavior risk factorings so that they could ensure the  discriminatory impact of the marketing system ends by spreading of diseases.

387.   On one occasion after another defendants marketing was prepared for future definitive race promotions of African American males who have a higher rate of inherited disease causes;

388.   At certain and definitive of these defendants race promotions is because they have equivocated that there marketing is systematically produced for the propensity of promoting and motivating health risks through the carriers of the diseases sickle cell anemia, aids and or HIV.

389.   As an example of defendants marketing standards, defendants have intentionally produced and developed marketing materials that is expectant to analytically predetermine a system of eugenics. Which is inclusive of the encouragement to have sexual desires, dreams of passion, sexual intercourse, child birth, procreation processes amongst the female race of plaintiff heritage and or likeness of appearance.

390.   In furtherance defendants have indelibly impressed, psychologically inspired and have proffered behavior risk of the women of plaintiff's heritages and or likeness so that they would act out performances and /or living out the occurrences of having sexual relations in everyday lifestyles with black persons with the disease sickle cell anemia.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 106 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

391.     Resultantly plaintiff's female heritage is to having children with a partner from outside of one's racially or ethnically defined group by the defendants' advertisements and marketing protocol which will likely cause, miscegenation, race conversioning, race extinction, exploiting of the diseases sickle cell anemia, HIV and or aids in the producing, marketing, distribution, advertising, publication, processing and sale of their products.

392.     As a direct and proximate result of, defendants marketing advertisements plaintiff would be multifariously discriminated upon and purposed sterilization.

393.     In sequence of these multifarious discriminatory Nissan marketing initiatives plaintiff as a Hispanic, Asiatic, would be purposed compulsory sterilization processes by restrictive higher pricing of a vehicle. Such as to intentionally delineate dating marital and family capabilities.

394.     Resultantly defendants removed invaluable vehicle support of transportation and income associations for marital capabilities such as by commerce, travel capabilities, dating, dowry, matrimony propositions, family inclusion there of  by way of vehicle ownership.

395.     As a direct and proximate result of defendants marketing, advertisements, plaintiff would be implemented into defendants human experiment, multifariously discriminated upon and purposed compulsory sterilization processes by the assumption and dispersion of the fatal disease sickle cell anemia.

## DEFENDANTS MARKETING PRORATED DISCRIMINATORY COMPORTMENTS AND DEFAMATION OF CHARACTER AGAINST PLAINTIFF'S HERITAGE

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 107 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

396.    Defendants projected marketing predication of transitional prorated disease carriers (such as by and for obtaining the symptoms of diseases, because African Americans black persons individuals have a 50 % to 100 % percent increased risk of becoming sickle cell anemia carriers, and have a higher rates of HIV – aids incidences as compared to plaintiff and plaintiff's heritages.

397.    As a direct and proximate result of these numerous restraint measures at the dealerships and simultaneous televised commercials (and publications) defendants were well aware of that there marketing procedures would scientifically purvey health risk factors on the general public of plaintiff's heritages and African Americans.

398.    This results as relevantly supporting the cryptographic fascist marketing messages, definitions and slogans "Shift" (Shift_Desire, Dreams, and Passion,) "DNA", "Heritage", "Black Experience", "Diversity", "Change is Good", "E [acute accent]", "Shift_Obstacles", "Shift_Expectations", "Shift_The Future", and Shift_"Innovation".)

399.    That all relevant times defendants utilized there discriminatory marketing comportments within combination of sports, movies, songs, TV shows, songs and music videos magazine, billboard, internet against plaintiff's heritage. As an example see note below:

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 108 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Note: As relating to the Nissan ad : "Forget about the Past" and "Move into the Future

Upon datum As part of their Shift_ marketing campaign Nissan would utilize the old adage phrase to "Forget about the Past" and/or "Move into the Future".

This campaign in turn would cause many protests in the African American community regarding the elements of excluding your slave history, and also withstanding about medical histories.

Upon datum In furtherance the marketing adages to "Forget about the Past" and/or "Move into the Future". was based on the medical hypothesis of sickle cell anemia assumptiveness.

Resultantly defendants marketing made medical assumptions based upon persons with the disease sickle cell anemia ' who would "Forget about the Past and would "Move into the Future" being biased upon heritages.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 109 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## SJC MARKETING FOR THE OBTAINMENT OF DISEASE SICKLE CELL ANEMIA AND IT'S MEDICAL TRAITS.

400.    Defendants have perpetrated multifarious offences to instigate there contempt against the plaintiff's Hispanic heritage and their Moon proprietorship. The following is 2 such examples of the defendant SJC impracticalities against plaintiff.

401.    Within the marketing of SJC impresario status there pertains to an ad utilization of the Moon, and sexual implication with an female of Hispanic appearances; See at Youtube Watch "3AM by SEAN JOHN Fragrance or type the website at http://youtu.be/OAOjWLSzUo.



Reference photograph of "SJC and Cassie 3AM As Above so Below Red Moon".

402.    Defendants additional implication against plaintiff's heritages was during see at SJC's, P Diddy's website at CIRCOLOCO DC10 @ IBIZA 06 AGO 2007 512 SHARESAVE. Cîroc is a vodka brand name marketed by Diageo and SJC.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 110 of 139.

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## MIGOS'S MUSIC VIDEO FOR OBTAINMENT OF DISEASES SICKLE CELL ANEMIA AND IT'S MEDICAL TRAITS.

403.    Defendants have perpetrated multifarious offences to instigate there offences against the plaintiff's Hispanic heritage within their music videos. In 2 such examples of defendants impracticalities against plaintiff heritage.

404.    Within the defendants marketing utilization for the song entitled "Slippery" is the utilization of females that appears of plaintiff's Hispanic heritage; See Attached photo of music video "Slippery" by rap group Migos feat. Gucci Mane.

405.    See Migos song "Slippery" feat. Gucci Mane - YouTube video at https://www.youtube.com/watch?v=Hm1YFszJWbQ



Reference photograph of music video "Slippery"

406.    See. Also. Migos song "Get Right Witcha"- YouTube video at https://www.youtube.com/watch?v=HeyfOEb7ET0.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 111 of 139

Mario A. Thompson
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## DEFENDANTS RATIO OF HEALTH AFFECTS AND RISKS

407.    A number of cultural, socioeconomic, and health-related factors contribute to the HIV epidemic in the US Hispanic/Latino community. Research shows that behavioral risk factors is a leading cause. (According to the 2005 CDC statistics) located at website www.cdc.gov.

408.    Upon information and belief during the past two decades, the percentage of Hispanic transitional children into sickle cell carriers has increased (from 1-1413 to 1-1200), According to the National Institute of Health ("NIH") located at website http://www.nih.gov.

409.    Additionally According to the NIH approximately 2 million Americans have sickle cell anemia -1 out of every 12 African Americans- 1-out of 1200 Hispanic Americans carry the genetic trait associated with the disease. The disease occurs in 1 out off every 500 African American births and 1 in every 1000-1413 Hispanic American births. The prevalence of the disease has produced both a federal and local call for development of appropriate testing of individuals at risk, effective treatments to reduce the debilitating symptoms and irreversible damage to major body systems, genetic screening of fetuses, and remedies for the psychosocial well-being of affected individuals and their families.

410.    Today, there are nearly twice as many sickle cell anemia children and almost three times as many sickle cell anemia carriers as there were in 1980. The figures of death related to sickle cell anemia are so insurmountable that they are not fully yet ascertainable in the U.S. and other deaths which are currently associated with sickle cell anemia related diseases left unabated, higher incidence of new ethnic involvement of sickle cell anemia will cause more unpreventable diseases and death.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 112 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

411.    The Centers for Disease Control report on AIDS in the US epidemic shows that in
2005, 73% of people diagnosed with AIDS were men. Within the African American
population, men represent 65% of AIDS cases. Black women account for 72% of all the
new HIV cases in women. During 2005, 49% of all new HIV diagnoses and 50% of new
AIDS diagnoses were in black people. (According to Avert 2005 statistics. AVERT is an
international AIDS charity AIDS & HIV information center (located at website
www.avert.org) in recent years the number of HIV diagnoses has remained relatively
stable in most ethnic groups. However, the rate of HIV diagnoses among Asians/Pacific
Islanders increased by an estimated 61% between 2001 and 2005 (Upon information
and belief in furtherance the defendants have discriminated against plaintiff because
plaintiff is of a Cuban/Asian/Pacific appearance.)

412.    As a direct and proximate result of the abovementioned plaintiff complains that
Nissan – Infiniti and the automobile dealerships are responsible for an overall marketing
campaign utilized for multifarious discriminatory conducts which contained (suffrages of
marketing based on assumptions of external sterilization, the marketing of disease
acquisition, discrimination, outward discrimination analysis, racial profiling, fascism,
miscegenation, eugenics and genetic discrimination on behalf and against the plaintiff.)

413.    In finality of this multifarious discriminatory marketing campaign by Nissan-Infiniti,
NILT and the automobile dealerships plaintiff will have been a part of a lifelong
derogatory mental indentation of analytical heritage extinction formulations perpetrated
by the discriminatory conducts within this complaint. As a result this matter should be
brought to trial such as for;

(a) Whether the defendants has utilized there multifarious marketing strategies for
genocidal practices against plaintiff;

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 113 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

(b) Whether the defendants marketing intended to knowingly, intentionally and systematically benefit from discriminatory conducts and defamation of character policies at the detrimental expense of the plaintiff;

(c) Whether the defendants discriminatory marketing policies intended plaintiff to be persuaded into purchasing or leasing a vehicle from only a black person salesman;

(d) Whether the defendants marketing is knowingly, intentionally and systematically a process of compulsory sterilization;

(e) Whether the defendants marketing is intended to sterilize plaintiff by their compulsory marketing processes;

(f) Whether the defendants knowingly, intentionally and systematically benefited from the use of the human experimental marketing comportments at the detrimental expense of the plaintiff;

(g) Whether the defendants hire employees, agents, representatives or servants, with and for the intentional purpose to disperse the diseases sickle cell anemia;

(h) Whether the defendants marketing was anticipatory of the life expectancy for an black person with the diseases sickle cell anemia;

(i) Whether the defendants marketing intended and inclined sexual relationships that would predicate children who would have diseases related to black persons such as sickle cell anemia and/or other detrimental adverse health effects;

(j) Whether the defendants' knew or should have known that there marketing causes

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 114 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Case 1:20-cv-08599-CM   Document 1   Filed 09/28/20   Page 114 of 139

Complaint no.                    Date: September of 2020          Page 115 of 139
File at: SDNY

health dangers, impressions, refortification, behavior risks and conversion
capabilities by its advertisements, and thereby facilitate, cause, exacerbate,
antiquate and/or induce diseases related to black persons such as sickle cell
anemia, and/or aids and other detrimental and adverse health effects;

(k) Whether the defendants marketing was anticipatory for review of the U.S.
miscegenation laws, by the U.S. Supreme Court and United Nations combined.

## COUNT ONE
## (Attempted Murder)

1.    Plaintiff repeats and realleges each and every allegation of the complaint
designated "1" through "413" inclusive, with the same force and effect as it is fully set
forth herein at length.

2.    Defendants have all conspired, defamed and discriminated upon plaintiff with
each other and with others, both known and unknown to plaintiff, for the purpose of
compulsory sterilization, genocide of plaintiff and plaintiff's heritages. Failing  of the
equal protection of the laws, and the equal privileges and immunities under the laws,
including the right to make and enforce contracts without discriminatory intent, in
connection with leasing and or purchasing of an automobile allocated by the defendant
white persons and black persons.

3.    At each interval defendants would discriminate on the plaintiff and at every
stage was defendants marketing discriminatory against the plaintiff for the purpose of
mandating and or negating contracts for the purpose of compulsory sterilization,
genocide, attempted murder procedures. In furtherance inclusion with of higher risk
categorizing for the proliferation of the diseases sickle cell anemia and aids (and on

---

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 115 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

the general public by way of these conducts.)

4.    As a direct and proximate result of defendants' illegal conspiracy against plaintiff, plaintiff has been injured in their persons and properties, in an amount to be determined at trial, but not less than TEN BILLION ($10,000,000,000) DOLLARS.

## COUNT TWO
### (Civil Rights Act, 42 U.S.C. § 1981, 1997)

5.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

6.    Defendants have all conspired, defamed and discriminated upon plaintiff with each other and with others, both known and unknown to plaintiff, for the purpose of depriving plaintiff of the equal protection of the laws, and the equal privileges and immunities under the laws, including the right to make and enforce contracts without discriminatory intent, in connection with leasing and or purchasing of an automobile allocated by the defendant white persons and black persons.

7.    At each interval defendants would discriminate on the plaintiff and at every stage was defendants marketing discriminatory against the plaintiff for the purpose of mandating and or negating contracts for the purpose of "human experimentation" practices and compulsory sterilization procedures. In furtherance inclusion with of higher risk categorizing for the proliferation of the diseases sickle cell anemia and aids (and on the general public by way of these conducts.)

8.    As a direct and proximate result of defendants' illegal conspiracy against

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 116 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

plaintiff, plaintiff has been injured in their persons and properties, in an amount to be determined at trial, but not less than TEN BILLION ($10,000,000,000) DOLLARS.

## COUNT THREE
## (TITLE VI, 42 U.S.C. § 1983)

9.   Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

10.   Defendants employer and their agents, servants, employees and other persons acting in concert with them practices have conspired, defamed and discriminated upon plaintiff with each other and with others, both known and unknown to plaintiff, for the purpose of depriving plaintiff of the equal protection of the laws, and the equal privileges and immunities under the laws, including the right to make and enforce contracts, in connection with leasing and or purchasing an auto allocated by white persons and black persons utilizing conspiratorial acts to discriminate against plaintiff.

11.   At each interval defendants would discriminate on the plaintiff and at every stage was defendants marketing discriminating against the plaintiff for the purpose of mandating "human experimentation", compulsory sterilization procedures and inclusion with of higher risk categorizing for the proliferation of the diseases sickle cell anemia and aids (and on the general public by way of these conducts.)

12.   In furtherance as a proximate direct and proximate result of defendants conspiracies, discrimination actions plaintiff has suffered emotional distress in the sum of TEN BILLION ($10,000,000,000) DOLLARS. Because of defendants' actions were willful and in reckless disregard, plaintiff is entitled to an award of punitive damages.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 117 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## COUNT FOUR

### (U.S.C. § 2000a(c)(4)- Failure to Accommodate)

13.    Plaintiff repeats and realleges each and every allegation of the complaint
designated "1" through "413" inclusive, with the same force and effect as it is fully set
forth herein at length.

14.    Defendants' repeated the directive that Mr. Thompson would not be permitted to
purchase or lease a vehicle without being involved with conspiracies for racial
prompting and imprinting to a black salesperson.

15.    Defendants' mandated that Mr. Thompson would not be permitted to speak to a
white sales person without being involved with conspiracies for racial prompting and
imprinting to a black salesperson.

16.    Defendants' repeatedly required and gave directive to Mr. Thompson to speak
and negotiate contracts with black sales persons who have the fraudulent intents to
discriminate while attempting to purchase or lease this vehicle.

17.    At each interval defendants would discriminate on the plaintiff and at every
stage was defendants marketing discriminatory against the plaintiff.

18.    At one point defendants mandated plaintiff into a compulsory sterilization
procedures of defendants and inclusion whilst practicing categorizationing of a higher
risk for the proliferation of the diseases sickle cell anemia and aids (and on the general
public by way of these conducts.)

19.    Mr. Thompson has suffered adverse consumer consequences as a direct and

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 118 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

proximate result of the defendants' discriminatory and conspiratorial marketing
conducts towards him.

20.    Defendants' conduct towards Mr. Thompson constitutes illegal discrimination as
proscribed.

21.    As a direct and proximate result of defendants' improper and illegal conduct, Mr.
Thompson has and will continue to suffer harm.

## COUNT FIVE
### (Breach of Implied Contract)

22.    Plaintiff repeats and realleges each and every allegation of the complaint
designated "1" through "413" inclusive, with the same force and effect as it is fully set
forth herein at length.

23.    For such damages as plaintiff has sustained as a consequence of defendants
breach of implied contract, in an amount to be proven at trial, together with interest
thereon as provided by law, but in no event less than TEN ($10,000,000,000)
DOLLARS; For the costs of suit and reasonable Pro Se and attorneys' fees; and For
such other and further relief as the Court deems appropriate.

24.    On the day of signing the lease agreement - defendants would install plaintiff
into an higher credit rating system possessing a mandatory banking fee and remove
the opportunity for plaintiff to pay for the car in a lump sum financing at a reduced cost.
Resultantly defendants would remove previously discussed lower financing and
contractual leasing arrangement.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 119 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

25.    As a direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT SIX
### (Disparate Impact)

26.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

27.    Mr. Thompson has been to the dealerships by defendants for over many years 10. He remains a fully qualified consumer.

28.    Defendants' adverse conduct towards Mr. Thompson, as described, has had an unjustified, adverse and disparate impact on Mr. Thompson and other similarly situated consumers of, and constitutes illegal discrimination as proscribed by (U.S.C. § 2000a(c)(4)- Failure to Accommodate.)

29.    As a direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT SEVEN
### (Disparate Treatment)

30.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 120 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

31.    Defendants are responsible for establishing the terms, conditions, policies and practices that bear upon their employees and the consumer.

32.    Defendants have been consistent with policies and defendants have selectively enforced policies to target plaintiff and practices and necessitate that they speak to certain black sales persons for a higher price of a vehicle. As a direct and proximate result of defendants' discriminatory application and enforcement of these policies, plaintiff and other similarly situated consumers have suffered the adverse actions.

33.    Defendants' aforementioned conduct amounts to a selective enforcement of discriminatory policies that take the adverse consumer actions against plaintiff and other similarly situated consumers who are unable to comply with the higher price marketing policies of defendants.

34.    As a direct and proximate direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT EIGHT

### (New York State Human Rights Law § 296 – Failure to Accommodate)

35.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

36.    Mr. Thompson as a consumer informed defendants of his intents to purchase and lease a vehicle.

37.    Defendants' repeated the directive that Mr. Thompson would not be permitted to

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 121 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

purchase or lease a car without discussing his purchase with certain black salesman that were of fraudulent and discriminatory practices.

38.     Defendants' repeated directive that Mr. Thompson is required to speak and negotiate contracts with certain black salesman that were of discriminatory practices against Mr. Thompson beliefs.

39.     Mr. Thompson has suffered adverse consumer consequences as a direct and proximate result of the defendants' discriminatory and conspiratorial conducts towards him.

40.     Defendants' conduct towards Mr. Thompson constitutes illegal discrimination as proscribed by the New York State Human Rights Law, N.Y. Exec. L. § 296.

41.     As a direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT NINE
### (New York State Human Rights Law – Disparate Impact)

42.     Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

43.     Mr. Thompson has been to the dealerships 4 separate occasions defendants' adverse conduct towards Mr. Thompson, as described herein, has had an unjustified, adverse and disparate impact on Mr. Thompson and other similarly situated, and constitutes illegal discrimination as proscribed by the New York State Human Rights

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 122 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

Complaint no.        Date: September of 2020      Page 123 of 139
File at: SDNY

Law, N.Y. Exec. L. § 296.

44.    As a direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT TEN

### (New York State Human Rights Law – Disparate Treatment)

45.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

46.    Defendants are responsible for establishing the terms, conditions, policies and practices that bear upon the consumers of their products.

47.    Defendants have selectively enforced discriminatory policies to target plaintiff and require that they speak to certain sales persons for a higher than average cost of a vehicle. As a direct and proximate result of defendants' discriminatory application and enforcement of these policies, plaintiff and other similarly situated consumers have suffered adverse higher prices by these consumer actions.

48.    Defendants' aforementioned conducts amounts to a selective enforcement of discriminatory policies and the taking of adverse actions against plaintiff and other similarly situated consumers who are to comply with the discriminatory policies.

49.    As a direct and proximate result of defendants' improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 123 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## COUNT ELEVEN

### (42 U.S.C. § 1983 – First Amendment, U.S. Constitution)

50.     Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

51.     Upon information and belief, defendants policies are not consistently enforced by defendants as they permit other consumers to whom entertain the notion of leasing or purchasing a vehicle. For example, Caucasian persons are permitted to speak to a white salesman based upon entering the defendants automobile dealerships and thereby lease and or purchase a vehicle without being conspiratorially, mandated into negotiating an automobile financial arrangement with a black salesperson.

52.     Upon information and belief in furtherance, defendants permitted Caucasian consumers without regard. For example, white persons are permitted to speak to white salesman and not enforcedly mandated to speak and or negotiate contracts with black salespersons based upon entering the dealership to purchase a vehicle.

53.     Notwithstanding these facts, defendants refused to permit an exemption from its irregularly enforced policy for Mr. Thompson, who has raised an anti-discriminatory based objection to defendants' marketing policies.

54.     While defendants tolerate and make *de facto* exemptions from their policy for secular reasons, they have not offered any substantial justification for refusing to provide similar treatment for plaintiff who seeks an exemption from their policy of discrimination.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 124 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

55.    In so doing, defendants have violated Mr. Thompson's rights under the Free Exercise Clause of the First Amendment of the U.S. Constitution.

56.    As a direct and proximate result of defendants improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

### COUNT TWELVE
### (Harassment)

57.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

58.    Subsequent to informing defendants of complaints Mr. Thompson was subjected to acts of harassment by defendants during, untimely payment notification, auto repairs, resultantly having parts removed his vehicle without notice.

59.    Defendants' conduct towards Mr. Thompson was a direct and proximate result of harassment for the exercise of these beliefs and practices in violation of the common laws of the State of New York.

60.    As a direct and proximate result of defendants improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

### COUNT THIRTEEN
### (Retaliation)

61.    Plaintiff repeats and realleges each and every allegation of the complaint

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 125 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

62.    Subsequent to informing defendants of his complaints defendants prevented the plaintiff from the leasing of a vehicle without higher than average prices.

63.    Consequentially after leasing his vehicle plaintiff would be subject to late payment notification, ill repairs of his vehicle, missing parts  and during the return of the leased vehicle plaintiff was conspired upon and subjected to speak to an African American sales persons at IOM.

64.    At each interval defendants discriminated on the plaintiff and at every stage of defendants marketing.

65.    Mr. Thompson, as described herein, was subjected to acts of retaliation by defendants.

66.    Defendants' conduct towards Mr. Thompson was a direct and proximate result of his age, race, color, religion and a form of retaliation in violation of the common laws of the State of New York.

67.    As a direct and proximate result of defendants improper and illegal conduct, Mr. Thompson has and will continue to suffer harm.

## COUNT FOURTEEN

### (New York General Business Law Sections §§ 349 and 350)

68.    Plaintiff repeats and realleges each and every allegation of the complaint

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 126 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

designated "1" through "413" inclusive, with the same force and effect as it is fully set forth herein at length.

69.    For such damages as plaintiff has sustained as a consequence of defendants, in an amount to be proven at trial, together with penalties and interest thereon as provided by law, but in no event less than TEN-BILLION ($10,000,000,000) DOLLARS; For the costs of suit and reasonable Pro Se and attorneys' fees; and For such other and further relief as the Court deems appropriate.

70.    Defendants' repeated the directive that Mr. Thompson would not be permitted to purchase or lease a vehicle without excessive bank fees and or higher than average costs for a vehicle.

71.    Defendants' repeatedly required Mr. Thompson to purchase or lease his vehicle with hidden bank fees and costs.

72.    Mr. Thompson has suffered adverse consumer consequences as a direct and proximate result of the defendants' conspiratorial conducts towards him.

## COUNT FIFTEEN
### (Punitive Damages)

62.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as if fully set forth herein at length.

63.    The acts of agents, servants and employees of each of the respective defendants were willful, wanton, fraudulent in total disregard of the legal rights of the

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 127 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

plaintiff and undertaken with the intent to injure plaintiff and others.

## COUNT SIXTEEN
### (Defamation of Character)

64.     Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as if fully set forth herein at length.

65.     That defendants made, prepared and allocated multifarious marketing materials by way of advertisements on radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline which was to be distributed to others, than the plaintiff being defamed.

66.     Alongside defendants made false statements and photographs about plaintiff during these comportments (rather than opinion.) That defendants statements and photographs can be proven to be fraudulent and intentionally defamatory.

67.     Defendants willfully and wantonly set out to injury the reputation of the ("plaintiff") by these multifarious marketing materials on radio, television, sports, movies, songs, movies, music videos, games, magazine, radio, internet, billboard, newspapers, digital online and offline and was not privileged to do so.

68.     In furtherance as a proximate direct and proximate result of defendants comportments plaintiff has suffered emotional distress in the sum of TEN- BILLION ($10,000,000,000) DOLLARS. Because of defendants' actions were willful and wanton in reckless disregard, plaintiff is entitled to an award of punitive damages.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 128 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## COUNT SEVENTEEN
### (Libelous Slander Per Se.)

69.     Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as if fully set forth herein at length.

70.     The evidences of defendants libelous slander per se are by the defendants marketing processes, radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline against plaintiff and are shamefully informing of the ordinary, observer out to detriment the plaintiff.

71.     The statements were predisposed and intentional to injure plaintiff in their reputations, character and businesses and in fact did so.

72.     Defendants willfully and wantonly caused the libelous statement to be distributed knowing factually of its harmful disregard of plaintiff , defendant's  have refused plaintiff's demand that it retract the false statement from further release to the public.  defendants have continued there fraudulent pretenses of the plaintiff from the onset of plaintiff's complaint until present date.

73.     In furtherance as a proximate direct and proximate result of defendants conspiracies, discrimination actions plaintiff has suffered emotional distress in the sum of TEN BILLION ($10,000,000,000) DOLLARS. Because of defendants' actions were willful and wanton in reckless disregard, plaintiff is entitled to an award of punitive damages.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 129 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

## COUNT EIGHTTEEN

## (Equal Credit Opportunity Act)

74.    Because of the foregoing acts, and by way of example to punish defendants, plaintiff is entitled to punitive damages in the sum of to be determined after trial.

75.    Plaintiff incorporates herein all other allegations contained in the complaint designated "1" through "413". NILT is a creditor as defined in Regulation B, Section 202.2(l) of the Equal Credit Opportunity Act.

76.    NILT, in the ordinary course of its business, participated in every decision of whether or not to extend credit to the plaintiff.

77.    NILT, at all times relevant to this complaint, was fully aware of the policy and practice that resulted in the discrimination described herein and, in fact, designed, controlled, implemented and profited from the discriminatory policy and practice, referred to herein as the "Finance Charge Markup" system:

78.    NILT is a creditor-as defined in Regulation B, Section 202.2(l), in the capacity of a lender, in that all discriminatory actions that were taken by NILT dealers in accordance with the specific-authority-granted to; NILT dealerships discriminatory actions were implemented using various forms and documents provided by NILT to the NILT dealers, the discriminatory actions were taken in furtherance of NILT's goals and objectives and the discriminatory actions financially benefited NILT.

79.    NILT delegated to the NILT dealers the authority to markup finance charges without regard to credit risk factors pursuant to the "Finance Charge Markup" system, which resulted in unlawful discrimination.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 130 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

80.    All actions taken by NILT dealers are attributable to NILT under agency principles based on the doctrines of express authority and apparent authority.

81.    NILT is a creditor as defined in Regulation B, Section 202.2(l), in the capacity of an assignee, since NILT, in the ordinary course of its business, participated in every decision of whether or not to extend credit to the plaintiff.

82.    NILT dealer arrangers/originators are creditors as defined in Regulation B, Section 202.2(l) in that NILT dealers, "in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made.

83.    NILT is liable for any and all ECOA violations committed by NILT dealers as the assignee of the NILT dealers. All NILT retail installment contracts, which were designed and paid for by NILT, for all dates relevant to this lawsuit, contained the following clause as required by the Federal Trade Commission Holder Rule, 16 CFR Ch. 1, Part 433. (l-l-98) Edition:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEEENSES WHICH 'THE DEBTOR COULD ASSERT OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

84.    The discriminatory charges that were charged to Mr. Thompson arose directly from "credit transactions" as defined in Regulation B, Section 202.2(m).

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 131 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

85.     The discretionary charges that resulted from the "Finance Charge Markup"
system were over and above the finance charge that Mr. Thompson was eligible for
based on their credit risk rating.

86.     The average of the discretionary non-risk related charges imposed on Mr.
Thompson and other Hispanics and or African Americans pursuant to the "Finance
Charge Markup" system were significantly greater than the average discretionary non-
risk related charges imposed on white consumers.

87.     The disparities between the terms of the credit transactions involving Hispanics-
African Americans and the terms involving white consumers could not have occurred
by chance and cannot be explained by factors unrelated to race.

88.     NILT's policies and practices, as described herein, constitute:

a. A "pattern or practice" of resistance to the full enjoyment of rights secured by the
Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; and

b. Discrimination against applicants with respect to credit transactions, on the basis of
race or national origin in violation of the Equal Credit Opportunity Act, 15 U.S.C. 5
1691(a)(l) and Regulation B, § 202.4.128.

c. Mr. Thompson and aggrieved persons as defined in the Equal Credit Opportunity
Act have suffered damages as a direct and proximate result of NILT's discriminatory
conduct as described herein.

89.     Plaintiff, on their behalf, and on behalf of all persons similarly situated, sue NILT
pursuant to the ECOA, and all appropriate and allowable relief.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 132 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

90.     Pursuant to the ECOA, plaintiff seeks compensatory damages equal to the
difference between the charges imposed on their pursuant to the "Finance Charge
Markup" system and the average charges imposed on white persons during the same
time period.

## COUNT NINETEEN
### (ECOA Proof Analysis - Disparate Impact)

91.     Plaintiff repeats and realleges each and every allegation of the complaint
designated "1" through "413" inclusive, with the same force and effect as if fully set
forth herein at length.

92.     The plaintiff alleges that NILT'S "Finance Charge Markup" system, although
facially neutral, has a disproportionately negative effect on Hispanics and African
Americans and other minorities.

93.     Pursuant to the disparate impact analysis, the plaintiff specifically alleges;
(a.) The specific facially neutral NILT practice that the plaintiff is challenging is NILT's
"Finance Charge Markup" system;

94.     (b.) The disparity between the amount of "Finance Charge Markup" imposed on
Hispanics and African Americans and that charged similarly situated white persons
indicates a clear causal connection between the "Finance Charge Markup" system and
the discriminatory result;

95.     (c.) The disparities that exist are evidenced by a statistical review of an
adequate, competent and relevant data set.

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 133 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

96.    (d.) There are no legitimate business reasons to justify NILT's discriminatory "Finance Charge Markup" system that could not be achieved by a practice that harmless discriminatory impact.

## COUNT TWENTY
### (Conversion)

97.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as if fully set forth herein at length.

98.    That the defendants willfully and wantonly set out to genocide the heritage associated with the ("plaintiff") by their multifarious marketing allocations by the way of radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline  and was not honoured to do so by any officious city, state or government organization.

99.    The defendants average non-discretionary marketing caused risk related to Hispanics pursuant to plaintiff's probable dating, marital association by way of defendants defamatory marketing processes by the way of radio, television, sports, movies, songs, movies, music videos, games, magazines, internet, billboards, newspapers, digital online and offline and was not honoured to do so.

100.    By the defendants Finance Charge Markup, Bank Fees, system  plaintiff was significantly charged greater than the average discretionary non-risk related charges not  imposed on white consumers. defendants pretenses were too cause harm and loss to plaintiffs dating and marital association to compulsorily sterilize plaintiff for the benefit of black persons and conversion of the race of plaintiff.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson. Page no. 134 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

101.    In furtherance as a proximate direct and proximate result of defendants
conversion conspiracies, discrimination comportments plaintiff has suffered emotional
distress in the sum of TEN BILLION ($10,000,000,000) DOLLARS. Because of
defendants' actions were willful and wanton in reckless disregard, plaintiff is entitled to
an award of punitive damages.

## COUNT TWENTY ONE
### (Conspiracy)

102.    Plaintiff repeats and realleges each and every allegation of the complaint
designated "1" through "413"  inclusive, with the same force and effect as if fully set
forth herein at length.

103.    Defendants separately and in combination by their agents, servants, employees
and other persons acting in concert with them have perpetrated the multifarious
detrimental comportments by the conspiracy with each other committing such for the
purpose of "human experimentation" by defendants discriminatory conducts and
defamation of plaintiff's character as abovesaid.

104.    By reason of defendants' contiguous conspiratorial acts alleged above,
defendants are liable to plaintiff for the actual damages suffered by plaintiff as a result
of said acts and any additional profits earned by each of the defendants as a result of
said acts; in amounts, as a result thereof, plaintiff has been injured and properties
which exceed the jurisdictional monetary limits of this Court and but not less than TEN
BILLION ($10,000,000,000) DOLLARS;.

## COUNT TWENTY TWO
### (Injunctive Relief)

This lawsuit is based upon Attempted Murder,          **Mario A. Thompson**
Compulsory Sterilization, Eugenics, Genocide,              Plaintiff Pro Se
Human Experimentation, Civil Rights, Human                 P.O. Box 1004
Rights, Defamation of Character, Fraud and                 New York, N.Y. 10163
Misrepresentation. The contents of this complaint          Phone: 646-377-6677
is copyrighted © 2020 by Mario A. Thompson.               Email: mat92878@gmail
Page no. 135 of 139

105.    Plaintiff repeats and realleges each and every allegation of the complaint

designated "1" through "413" inclusive, with the same force and effect as if fully set

forth herein at length

106.    Pursuant to the Civil Rights violations Equal Credit Opportunity Act, and the

inherent authority of This Court, appropriate injunctive' relief should prohibit further use

of the terms or slogans "SHIFT (SHIFT_DESIRE, DREAMS, AND PASSION)", "DNA",

"HERITAGE", "BLACK EXPERIENCE", "CHANGE IS GOOD", "E [ACUTE ACCENT]",

"SHIFT_OBSTACLES", SHIFT_EXPECTATIONS", "SHIFT_THE FUTURE", SHIFT _

INNOVATION  and "INNOVATION" as it presently exists. Such injunctive relief should

include:

A. Requiring extensive anti- discrimination training of all employees;

B. Requiring Nissan, NILT to provide extensive anti-discrimination training for its

dealer arrangers/originators;

C. Requiring defendants to monitor and/or audit the racial pattern of "it's marketing to

ensure the anti-discriminatory impact of the "marketing system ends.

107.    Pursuant to the Equal Credit Opportunity Act, and the inherent authority of This

Court, appropriate injunctive' relief should prohibit further use of "Finance Charge

Markup" system and thereby implicated "Bank Fees" employed by NILT, as it presently

exists. Such injunctive relief should include:

A.) Prohibition of non-risk related "Finance Charge Markup", or alternatively,

restrictions limiting the amount of "Finance Charge Markups";

This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 136 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

B.) Requiring extensive ECOA training of NILT employees;

C.) Requiring NILT to provide extensive ECOA training for its dealer arrangers/originators;

D.) Requiring NILT to impose requirements pursuant to its standard "Retail Plan-Without Recourse" agreement regarding the minimum qualifications of persons engaged in arranging/originating NMAC finance transactions;

E.) Requiring NILT impose requirements pursuant to its Retail Plans Without Recourse agreement dealers to monitor the racial pattern of "Finance Charge Markup" and "Bank Fees;

F.) Requiring NILT to monitor and/or audit the racial pattern of "Finance Charge Markup" and "Bank Fees" to ensure the anti-discriminatory impact of the "Finance Charge Markup" and "Bank Fees" system ends.

## COUNT TWENTY THREE
### (U.S.C. § 1983, 28 U.S. Code § 1927, 22 U.S. C § 7102, and 34 U.S.C. § 10450 sanctions and levies upon the defendants).

108.    Plaintiff repeats and realleges each and every allegation of the complaint designated "1" through "413" inclusive, with the same force and effect as if fully set forth herein at length

109.    That the court imposes sanctions upon the defendants to pay to for the cost of the burden of the lawsuit, as the defendants should be levied for ONE BILLION ($1,000,000,000) DOLLARS for excessive court costs and legality fees.

This lawsuit is based upon Attempted Murder, Compulsory Sterilization, Eugenics, Genocide, Human Experimentation, Civil Rights, Human Rights, Defamation of Character, Fraud and Misrepresentation. The contents of this complaint is copyrighted © 2020 by Mario A. Thompson.
Page no. 137 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

**THEREFORE,**

Plaintiff demands judgment against defendants:

(A) Ordering an immediate injunction on defendants total marketing.
Such as by defendants advertisements, television commercials, billboards,
publications, websites, digital online and offline;

(B) Declaring and Adjudging defendants' conduct alleged in this
Complaint to be discriminatory and in violation of plaintiff's Civil
Rights and the common law;

(C) Permanently enjoining defendants from discriminating against
plaintiff on any basis forbidden by the laws of both the State of
New York and Federal;

(D) Ordering the development of a consumer dispute
process through collaboration of consumer and management officials, to
resolve future disputes at their incipient stages;

(E) Ordering that defendant compensate, reimburse, and make whole
the plaintiff for all the benefits plaintiff would have received but for
defendants' conduct, including but not limited to cost of auto rentals,
unwarranted banking fees, finance charge markups;

(F) Ordering an award for any additional compensatory, consequential
damages or punitive damages as the Court may deem just and
proper, including pre- and post-judgment interest;

This lawsuit is based upon Attempted Murder,                **Mario A. Thompson**
Compulsory Sterilization, Eugenics, Genocide,                Plaintiff Pro Se
Human Experimentation, Civil Rights, Human                   P.O. Box 1004
Rights, Defamation of Character, Fraud and                   New York, N.Y. 10163
Misrepresentation. The contents of this complaint            Phone: 646-377-6677
is copyrighted © 2020 by Mario A. Thompson.                  Email: mat92878@gmail
Page no. 138 of 139

(G) Ordering an award of plaintiff's sanctions,

court fees and costs of the lawsuit; and


(H) For such other reliefs, deemed by the Court, on behalf of plaintiff.


WHEREFORE,


Dated: New York, N.Y.

September 14, 2020


_____

Mario A. Thompson

Plaintiff Pro Se

P.O. Box 1004

New York, N.Y. 10163

Phone: (646) 377-6677

Email: mat92878@gmail.com


This lawsuit is based upon Attempted Murder,
Compulsory Sterilization, Eugenics, Genocide,
Human Experimentation, Civil Rights, Human
Rights, Defamation of Character, Fraud and
Misrepresentation. The contents of this complaint
is copyrighted © 2020 by Mario A. Thompson.
Page no. 139 of 139

**Mario A. Thompson**
Plaintiff Pro Se
P.O. Box 1004
New York, N.Y. 10163
Phone: 646-377-6677
Email: mat92878@gmail

# STAPLES®
*Make More Happen*

Low prices.  Every item.  Every day.
Store No:1667
2040 White Plains Road
Bronx (White Plains), NY 10462
718-409-9260

262626 00 026 69752
Receipt #: 69752          09/12/2020 14:50

| Qty | Description | Amount |
|-----|-------------|--------|
| 16 | PC Rental Mins - 828483 | 4.80 |

| | | |
|---|---|---|
| | SubTotal | 4.80 |
| | Taxes | 0.43 |
| | Total | USD $5.23 |

Cash Card #: ***********2035 [S]
Swipe
Auth No.: 001853

Balance remaining on card: $18.53

Compare and Save
With Staples-brand products.
THANK YOU FOR SHOPPING AT STAPLES!

16670912206975226